**UNITED STATES of America, Appellee,**

v.

**Francis CURCIO and Gus Curcio, Defendants-Appellants.**

**No. 1000, Docket 82–1066.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1982.

Decided May 26, 1982.

Elaine S. Amendola, Bridgeport, Conn. (Jacob D. Zeldes, Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., on the brief), for defendants-appellants.

Richard D. Gregorie, (Strike Force Atty.), New Haven, Conn. (U.S. Dept. of Justice, Organized Crime & Racketeering Section, Alan H. Nevas, U. S. Atty., D. Conn., New Haven, Conn., on the brief), for appellee.

Before TIMBERS, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Francis Curcio and Gus Curcio, brothers, appeal from an order of the United States District Court for the District of Connecticut, T.F. Gilroy Daly, *Judge,* disqualifying their counsel in a pending criminal prosecution. Both Francis and Gus had retained Jacob D. Zeldes, Esq., and his firm, Zeldes, Needle & Cooper, P.C., to represent them. The court ruled that Zeldes and his firm could represent neither brother in the present case on the grounds that Zeldes's past, continuing, and proposed representation of each defendant presented Zeldes with conflicting interests and that neither defendant had made a knowing and intelligent waiver of his right to be represented by counsel free of any conflict of interest. Because we conclude that, in all the circumstances, the defendants were not given an adequate opportunity to make a knowing and intelligent waiver of their rights to conflict-free representation, we vacate the district court's order and remand the matter for further proceedings.

## FACTS

The present prosecution was commenced on January 13, 1982, with the filing of a seven-count indictment charging Gus Curcio with five counts of making extortionate extensions of credit, in violation of 18 U.S.C. §§ 2, 892 (1976); charging Francis Curcio with the same five counts, plus a sixth count, of making extortionate extensions of credit; and charging Francis, Gus, and three other persons (two of whom were also named in various substantive counts) with conspiracy to make extortionate extensions of credit in violation of § 892. The conspiracy count alleges that pursuant to the conspiracy Francis made such extensions of credit and directed Gus and the other defendants to make such extensions of credit.

Zeldes has represented each of the Curcio brothers in a series of criminal matters since 1969. He has defended Francis against charges of extortion, interstate travel in aid of racketeering, making false statements on a tax form, violating probation, and violating numerous Connecticut gambling laws. He has defended Gus against charges of gambling, sale and possession of marijuana, possession of LSD, interfering with a police officer, and murder. At the arraignment of the Curcios in the present action on January 28, Zeldes informed the court that he generally represented the Curcios and would probably represent them in the present matter, but he declined to enter a formal appearance until he had reviewed the possibility of a conflict of interest. The district judge directed the Curcios to return to court on February 5 for a determination of who would represent them.

On February 5 the government moved, pursuant to Fed.R.Crim.P. 44(c),[1] to disqualify Zeldes "as attorney for Francis and/or Gus Curcio" on two grounds. First, the government contended that Zeldes's representation of *both* Curcios in the present case would present a conflict of interest because the indictment attributes a different role to Francis than to Gus, and the Curcios may have different defenses available to them. Second, the government contended that *neither* Curcio should be represented by Zeldes because Zeldes's continuing representation of both brothers on other criminal matters presented Zeldes with a conflict of interest here as to each. Zeldes's brief on behalf of the Curcios, filed minutes after the government filed its motion, argued that a criminal defendant has a right under the Sixth Amendment to the Constitution to be represented by counsel of his choice and that he may waive his right to separate representation.

The court immediately held a hearing in which it heard oral argument from attorneys for both sides and questioned the defendants. The hearing was conducted under unusual time constraints, for on February 5 Gus was appearing, with Zeldes nearby for consultation as needed, before a state grand jury in connection with a murder for which Gus was then under investigation. The hearing in the present case was accordingly held in less than one hour, during the luncheon recess of the grand jury.

After hearing from the attorneys, the court questioned Gus Curcio. Gus stated that he was a high school graduate and had attended college for half a semester, that he had previously been a defendant in a felony trial, that Zeldes had advised him of his right to separate and independent counsel, that he understood this right, that he was aware that the court would find counsel for him if necessary, and that he understood that the case might develop in an unanticipated way to make his interest "very adverse" to that of a codefendant. Gus stated that he nevertheless waived his right to conflict-free representation in order to be represented by Zeldes. He also stated that he would waive his attorney-client privilege with respect to any of his communications with Zeldes to the extent that Zeldes wished to use the information on behalf of Francis. The court then asked Gus if he understood the possible conflicts between his and Francis's interests in deciding at trial whether or how to cross-examine witnesses or in deciding whether he or Francis should testify. Gus indicated that he understood, but inquired if he might later be allowed to discharge Zeldes. The court explained that this would be permitted only if "it meant no delay at any time in the proceedings." Gus reaffirmed his waiver on that basis.

The court then examined Francis Curcio along similar lines. Francis stated that he had reached the final year of high school but had not completed it, that he understood his right to separate counsel, that he realized that the court would find counsel for him if necessary, that he knew that conflicts of interest might arise, particularly in the cross-examination of witnesses and the decision whether or not he or Gus should testify, and that he realized that it was impossible to predict with certainty what conflicts might arise. Francis stated that he nevertheless waived his right to an attorney who was free of all conflict in order to retain Zeldes. He also stated that he would waive his attorney-client privilege with respect to any of his communications with Zeldes to the extent that Zeldes wished to use the information on behalf of Gus.

1. Fed.R.Crim.P. 44(c), which became effective on December 1, 1980, provides:

Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

At the conclusion of the hearing, the court orally granted the government's motion and ruled that Zeldes and his firm could represent neither defendant. The court read our previous decisions, *e.g., Camera v. Fogg*, 658 F.2d 80 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981); *United States v. DeFillipo*, 590 F.2d 1228, 1237–38 (2d Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979); *United States v. Mari*, 526 F.2d 117, 119–21 (2d Cir. 1975) (Oakes, J., concurring), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976), as suggesting that "trial judges should not allow [an attorney to represent more than one defendant in a criminal case] except in extraordinary circumstances"; the court stated that it found no such circumstances in the present case. Transcript at 34. On February 8, the court filed a memorandum of decision holding that neither defendant had made a knowing and intelligent waiver of his rights; and, citing *Camera, DeFillipo, Mari,* and *United States v. Carrigan*, 543 F.2d 1053, 1057–58 (2d Cir. 1976) (Lumbard, J., concurring), it concluded that a knowing and intelligent waiver is rarely possible unless a conflict is outside the realm of reasonable foreseeability.

This appeal followed.

## DISCUSSION

The appeal presents two sets of questions as to a criminal defendant's Sixth Amendment right to the effective assistance of counsel. First is the individual defendant's right to prefer representation by an attorney of his choosing over representation by any attorney of undivided loyalty—raising questions we have recently discussed in *United States v. Cunningham*, 672 F.2d 1064 (2d Cir. 1982), decided some two weeks after the district court's decision in the present case. The second matter, not raised by *Cunningham*, is the rights of two or more defendants to insist on being represented by the same counsel. In the circumstances of the present case, we conclude that the answers to both inquiries will depend on whether and to what extent Fran-

cis and Gus make knowing and intelligent decisions to waive the right to representation by an attorney of undivided loyalty.

### A. Representation of Either Francis or Gus

In *United States v. Cunningham, supra,* we dealt with an attempt by the government to disqualify counsel for Cunningham on the ground that his long-time counsel, Michael Tigar, had once represented an associate of Cunningham who would be a witness for the government at Cunningham's trial. The witness had been a defendant in an aborted trial in a related case, in preparation for which he had been represented briefly by Tigar; the witness did not object to Tigar's continued representation of Cunningham and did not join in the government's disqualification motion. On the other hand, the witness did not waive his right to assert his attorney-client privilege with respect to his communications with Tigar. Cunningham, an experienced attorney and politician, maintained, after extensive questioning by the court, that he wished to be represented by Tigar despite Tigar's conflict of interest. Cunningham stated his willingness to have Tigar's cross-examination of the witness limited to matters appearing in the record of the witness's own trial, thus protecting the witness's right to preserve the confidentiality of his privileged communications to the extent he had not waived it. We observed that a criminal defendant has not only a constitutional right to an attorney who has no conflict of interest but also a right—of constitutional dimension, although not absolute—to counsel of his own choosing, *e.g., United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir. 1973); *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969), and that the latter right should not be obstructed unnecessarily, *id.; United States v. Bernstein*, 533 F.2d 775, 788 (2d Cir. 1976). We noted further that the government's interest in disqualifying Tigar, since the government had no attorney-client privilege of its own to protect, was "relatively weak." *Compare Cunningham with United*

*States v. Ostrer*, 597 F.2d 337 (2d Cir. 1979) (upholding disqualification of defense counsel who was a former government attorney in related matters). We held that in such circumstances, when the defendant's two rights conflict, the decision as to which is to take precedence should be left to the defendant. *Cunningham* thus established that where the former client does not seek disqualification and his rights can be adequately safeguarded, the interests of the former client, the interest of the public in the integrity of the judicial system, and the interests of the defendant are best protected by honoring the defendant's knowing and intelligent decision to waive his right to an attorney of undivided loyalty in order to retain the attorney of his choice.

Applying this principle to the case before us, and leaving aside questions as to the propriety of joint representation, we see no reason why either Francis or Gus Curcio, individually, could not make a knowing and intelligent election to be represented by Zeldes despite the existence of a conflict of interest. The government's interest in disqualification, which was "relatively weak" in *Cunningham*, is even less persuasive here. Here the attorney-client privilege the government asserts is neither its own nor one belonging to a government witness, but rather one belonging to a defendant. Further, that defendant has not only stated that he does not object to Zeldes's representation of his brother, which was the extent of the concession of the client-witness in *Cunningham*, but has stated that he will waive his privilege to the extent that Zeldes wishes to use any of his confidential communications to defend his brother. If Zeldes were to represent either Gus alone or Francis alone, therefore, the present record suggests that the interests of the Curcio to be represented by Zeldes, the interests of the other Curcio, and the interest of the public in the administration of justice—including the government's interest in preserving an eventual conviction against attack on these grounds—could adequately be protected.

As discussed in Part C, *infra,* however, the context in which the Curcios have at-

tempted their waivers is not sufficiently clear for the court to determine without further inquiry that either Curcio has made the knowing and intelligent decision that is required for the court to recognize the waiver of a constitutional right.

## B. *Representation of Both Francis and Gus*

We believe that the matter of the rights of two or more defendants to be represented by the same attorney is governed by the same principles, although the dangers inherent in an attorney's representing more than one defendant in the same criminal proceeding make the contours of a knowing and intelligent waiver a good deal more complicated.

■ We start with the recognition that, while a criminal defendant has an absolute right under the Sixth Amendment to be represented by an attorney who has no conflict of interest, *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942), the effect of the Sixth Amendment guarantee is to grant a right, not to impose an obligation. Accordingly, in considering whether a defendant may forgo altogether representation by an attorney, the Supreme Court has ruled that the Sixth Amendment grants a right which the defendant may, "if he knows what he is doing and his choice is made with eyes open," waive. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Stating that "[w]hat were contrived as protections for the accused should not be turned into fetters," *id.*, the Court recognized that to forbid the waiver of a protected right would be to "imprison a man in his privileges and call it the Constitution," *id.* at 280, 63 S.Ct. at 242. Similarly, in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Court ruled that a state may not compel a defendant to accept representation by an attorney if he chooses to forgo it, observing that although the defendant "may conduct his own de-

fense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834, 95 S.Ct. at 2540 (quoting concurring opinion of Brennan, J., in *Illinois v. Allen,* 397 U.S. 337, 350–51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970)).

▪ Just as a defendant may waive the Sixth Amendment protections accorded him by electing to forgo counsel entirely, so may he waive his right to separate representation in a multidefendant prosecution. Thus, in *Holloway v. Arkansas, supra,* while holding that the trial court must explore the possibilities of conflict of interest where codefendants make timely motions for separate representation, the Supreme Court noted that

> [r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."

435 U.S. at 482–83, 98 S.Ct. at 1177–78 (quoting dissenting opinion of Frankfurter, J., in *Glasser v. United States, supra,* 315 U.S. at 92, 62 S.Ct. at 475). The principle that multiple representation is not impermissible emerged from the *Glasser* Court's treatment of the two jointly represented defendants before it, only one of whom had clearly consented to the joint cliency. The Court found a violation of the constitutional rights of the defendant who had objected to having his attorney represent the other defendant, but found no such violation of the rights of the defendant who had consented. 315 U.S. at 68–77, 62 S.Ct. at 464–68.

The principle that the right to separate representation may be waived finds its most recent support in the Supreme Court's decision in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), in which the same pair of retained attorneys represented three defendants charged with murder. The Court ruled that the mere fact of the multiple representation was not sufficient to establish a violation of Sixth Amendment rights, nor even to alert the state trial court that there might be need for an inquiry into potential conflicts of interest.[2] The Court stated that "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Id.* at 346–47, 100 S.Ct. at 1717 (footnote omitted). The Court construed its earlier decision in *Holloway v. Arkansas, supra,* as confirmation that multiple representation is not impermissible:

> *Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See 435 U.S., at 482 [, 98 S.Ct., at 1177]. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.

*Cuyler v. Sullivan, supra,* 446 U.S. at 348, 100 S.Ct. at 1718.

The decisions of our own Court similarly have recognized, although not without serious misgivings, that an attorney may represent more than one defendant in a criminal prosecution if those defendants so elect knowingly and willingly. *See, e.g., Kaplan v. Bombard,* 573 F.2d 708, 712 (2d Cir. 1978) (" '[T]he joint representation of defendants is

---

**2.** The Court noted that then-proposed Fed.R. Crim.P. 44(c), *see* note 1 *supra,* would require such an inquiry by the federal district courts.

not per se a denial of the effective assistance of counsel.' ") (quoting *People v. Gomberg*, 38 N.Y.2d 307, 312, 379 N.Y.S.2d 769, 342 N.E.2d 550 (1975)); *United States v. Carrigan, supra*, 543 F.2d at 1055 ("The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel."); *United States v. Mari, supra*, 526 F.2d at 119. *But see id.* at 120–21 (Oakes, J., concurring) (it is "only . . . in those exceptional circumstances where a conflict is not within the realms of reasonable foreseeability that dual representation by defense counsel should be permitted."); *United States v. Carrigan, supra*, 543 F.2d at 1058 (Lumbard, J., concurring) "The right to effective representation by counsel whose loyalty is undivided is so paramount in the proper administration of criminal justice that it must in some cases take precedence over all other considerations, including the expressed preference of the defendants concerned and their attorney.").

Our uneasiness about sanctioning the joint representation of criminal defendants persists because the dangers of prejudicial conflict are both ubiquitous and insidious. "[A] possible conflict inheres in almost every instance of multiple representation," *Cuyler v. Sullivan, supra*, 446 U.S. at 348, 100 S.Ct. at 1718, in part because the interests of the defendants may diverge at virtually every stage of the proceeding, *see generally* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interests and the Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119 (1978). Thus, the joint attorney may have to prefer the interests of one defendant over the other in deciding, for example,

whether to accept or reject a plea bargaining offer to one defendant conditioned on that defendant's testifying against the other; whether or not to present a defense that helps one defendant more than the other; whether or not to cross-examine a witness whose testimony may help one defendant and hurt the other; whether to have one defendant testify while the other remains silent; whether to have neither defendant testify because one would be a poor or vulnerable witness; whether or not to emphasize in summation that certain evidence is admitted only against (or is less compelling against) one defendant rather than the other; whether or not to argue at sentencing that one defendant's role in the criminal enterprise was shown only to be subordinate to that of the other defendant. These dilemmas are insidious because it often is not clear that the conflict of interests, and not pure trial strategy, are the reasons for the tactics adopted—or forgone—at trial. As the Supreme Court observed in *Holloway v. Arkansas*, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing," 435 U.S. at 489–90, 98 S.Ct. at 1181; "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process," *id.* at 490, 98 S.Ct. at 1181 (emphasis in original).

Notwithstanding the considerable dangers, however, the teaching of the Supreme Court in *Glasser, Holloway*, and *Cuyler* is that defendants may, if they act with their eyes open, elect to be represented jointly by a single attorney.[3] The recently adopted

---

**3.** The issue before us in the present appeal has focused on the Sixth Amendment rights of the defendants. As we noted in *United States v. Cunningham, supra*, 672 F.2d at 1070, "[t]his constitutional guarantee generally ensures that a criminal defendant may be represented by any counsel who will agree to take his case." Whether or not as a matter of ethical propriety Zeldes *should* agree to take the present case of either of the Curcios is not the issue before us, and our decision to vacate the district court's

disqualification does not in any way derogate from the American Bar Association's Code of Professional Responsibility, Disciplinary Rule 5-105(B) which provides:

A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing dif-

Fed.R.Crim.P. 44(c), set forth at note 1, *supra*, does not eliminate the defendant's power to waive his right to be represented by a conflict-free attorney. While the rule imposes on the trial court the duty to make prompt inquiries and to advise the jointly represented defendants as to their rights to separate representation, it does not forbid joint representation. It merely requires that where a conflict may arise "the court shall take such measures as may be appropriate to protect each defendant's right to counsel." Given the constitutional dimension of the defendant's right to counsel of his own choosing, if the defendant makes a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty, disqualification would not protect the Sixth Amendment right that the defendant asserts and would not be "appropriate."

## C. *"Knowing and Intelligent"*

Whether the question be the right of a single defendant to be represented by the attorney of his choice despite that attorney's conflict of interest or the rights of codefendants to share an attorney, the most fundamental and difficult problem for the court is determining whether or not the choice is pursued knowingly and intelligently.

> It is reasonably clear under [Supreme Court] cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

The first task of the trial court is to alert the defendants to the substance of the dangers of representation by an attorney having divided loyalties in as much detail as the court's experience and its knowledge of the case will permit. If each defendant persists in his request for joint representation, the court must assess whether the request is, as to each defendant, knowing and intelligent. This does not mean that the defendant must be able to predict with certainty which dilemmas will present themselves to counsel or how counsel will resolve them. Defendants need not be prescient. Nor need their decision be what an objective observer would deem sensible, prudent, or wise. The Supreme Court "consistently has 'rejected any paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case.'" *Edwards v. Arizona, supra,* 451 U.S. at 490–91, 101 S.Ct. at 1888 (Powell, J., concurring) (quoting *Michigan v. Mosley,* 423 U.S. 96, 109, 96 S.Ct. 321, 329, 46 L.Ed.2d 313 (1975) (White, J., concurring)). Rather, the defendants must be informed, and they must have the capacity for making a rational decision. *See, e.g., Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541 (defendant with high school education was "literate, competent, and understanding, and ... voluntarily exercising his informed free will," and should have been allowed on that basis to forgo counsel altogether). If the defendant reveals that he is aware of and understands the various risks and pitfalls, and that he has the rational capacity to make a decision on the basis of this information, and if he states clearly and unequivocally, *see United States v. Bernstein, supra,* 533 F.2d at 788, that he nevertheless chooses to hazard those dangers, we would regard his waiver as knowing and intelligent and allow his choice to "be honored out of 'that respect for the

fering interests, except to the extent permitted under [Disciplinary Rule] 5-105(C),

or Disciplinary Rule 5-105(C) which provides:

In the situations covered by [Disciplinary Rule] 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

individual which is the lifeblood of the law.'" *Faretta v. California, supra,* 422 U.S. at 834, 95 S.Ct. at 2540 (quoting concurring opinion of Brennan, J., in *Illinois v. Allen, supra,* 397 U.S. at 350–51, 90 S.Ct. at 1064).

In assessing the level of each defendant's comprehension of the dangers, the court may perhaps devise a variety of methods for gaining the necessary insights. On the whole, we think that questions designed to elicit from the defendant a narrative statement of his understanding are preferable to questions designed to elicit mere "yes" or "no" answers. The former methods are used by the court pursuant to Fed.R. Crim.P. 11 in determining whether to accept a defendant's plea of guilty, and would be appropriate in determining whether to accept an attempted waiver of the right to an attorney with undivided loyalty. *See, e.g., United States v. Garcia,* 517 F.2d 272, 277–78 (5th Cir. 1975):

> As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he had discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. *Cf. United States v. Foster,* 469 F.2d 1 (1st Cir. 1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." *National Equipment Rental v. Szukhert,* 375 U.S. 311, [332–33,] 84 S.Ct. 411, [423–24,] 11 L.Ed.2d 354, 367–8 (1964). Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.

*Id.* at 278.

■ Further, the court's inquiry in each instance should take place after the defendants have had a reasonable time to digest and contemplate the risks posed by joint representation. A reasonable time was not provided in the present case. The hearing, including the court's entire lecture to and questioning of the defendants, was held in less than an hour, squeezed into the luncheon break of a state grand jury. The court's decision was rendered at the conclusion of this brief hearing. Although the date for the hearing had been set a week earlier, and the possibility of Zeldes's conflict of interest was obviously to be the subject of the hearing, there was no opportunity for deliberation by the Curcios in light of the government's motion to disqualify Zeldes, because the hearing was held barely an hour after that motion was filed. Thus, at the hearing Zeldes stated that he had not had an opportunity for a discussion with Gus in light of the government's motion, and the circumstances indicate that he had had no opportunity for such a discussion with Francis either. Indeed it appears that Zeldes's efforts during the hearing to make up for this lack of opportunity contributed to the district court's decision to disqualify Zeldes, as the court based its finding that the Curcios' waivers were not knowingly and intelligently made

> not only on the inherent difficulty involved in a defendant's ability to foresee what conflicts might arise during the course of a criminal proceeding, *see Camera v. Fogg,* [*supra,*] but also on the fact that during the course of the hearing it became apparent to the Court that important factors regarding Mr. Zeldes representation had not been considered by either of the defendants. There were several hasty conferences between Mr. Zeldes and his associate, Ms. Amendola, as well as between Gus Curcio (who was the first to state his willingness to waive certain rights) and Mr. Zeldes. As the

record will reflect, Mr. Zeldes, at one point during the Court's inquiry as to waivers, stated that he had not discussed with Gus a crucial facet of the difficulties involved in his joint as well as his continuing representation of each of the Curcios. Shortly thereafter, Mr. Gus Curcio, apparently realizing the breadth of the waiver he was making inquired of the Court whether he could fire his lawyer when and if a conflict should become apparent. While this might indeed be possible, the resulting interruption and delay in the proceedings prompts this Court to avoid now, at a preliminary stage, what could and very well might occur at mid trial or which might not become fully apparent until after the trial was completed.

Slip op. at note 6.

We recognize that criminal proceedings in the district court must be moved along with dispatch, especially if a defendant remains incarcerated pending trial.[4] But recognition must be given to the fact that a defendant's right to counsel of his choice, albeit not absolute, is a right of constitutional dimension. Hence, the district court should not require that a defendant who would resist the government's efforts to disqualify his attorney assess the problems instantly or make his decision without pause for reflection. Cf. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (denial by state court of a reasonable time to allow the selection of counsel of one's own choosing may violate due process). Rather, the court should advise the defendant of his right to separate and conflict-free representation, instruct the defendant as to problems inherent in being represented by an attorney with divided loyalties, allow the defendant to confer with his chosen counsel, encourage the defendant to seek advice from independent counsel, and allow a reasonable time for the defendant to make his decision. If a reasonable time is not allowed to the defendant, both the opportunity for the defendant to make a knowing and intelligent decision and the opportunity for the court to assess correctly whether such a decision has been made are minimized.

■ Finally, as to the right of either Curcio to be represented by Zeldes, with the other Curcio represented by separate counsel, no reason appears on the present record why, in light of United States v. Cunningham, supra, such single representation would be inconsistent with the interests of either of the Curcios or with the proper administration of justice. The record as it presently stands, however, is inconclusive because the statements of both Curcios were made in the context of a government attack on both joint and individual representation. We can envision circumstances in which each codefendant would state his willingness to waive his attorney-client privilege and tolerate other conflicts in order to secure joint representation, but be unwilling to do so if only the other defendant was to be represented by the attorney in question. This is an especially real possibility where each defendant has been represented by the attorney in the past.[5] Thus, we believe the ambiguous procedural circumstances of the inquiry here make premature a conclusion as to whether either Gus or Francis, singly, could proceed with Zeldes as his attorney.

On remand, therefore, we suggest that the district court conduct the prescribed catechism with respect to the Curcios' desire to be represented jointly by Zeldes. If, after a reasonable opportunity for them to consider the problems to which they will have been alerted, they adhere to their choice of Zeldes, the court should honor this decision if it determines that it is knowing and intelligent as we have explicated that term. If the court determines that this

---

4. We are informed that one defendant charged in the conspiracy count of the indictment was unable to post bond and hence remained incarcerated.

5. It is noteworthy that the former client may secure the attorney's disqualification. See, e.g., United States v. Kaufman, 429 F.2d 240, 247 (2d Cir.), cert. denied, 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970).

decision is not knowing and intelligent, the court should inform the Curcios that joint representation by Zeldes will not be allowed, and should inquire whether either defendant wishes to be represented separately by Zeldes. If either does,[6] the court should make inquiries and impose restrictions adequate to safeguard such rights of the other Curcio as the latter wishes to preserve, and should make inquiries to ascertain whether in light of the mandated safeguards, the Curcio to be represented by Zeldes nevertheless knowingly and intelligently elects to proceed.

The order of the district court is vacated and the case is remanded for proceedings not inconsistent with this opinion.

---

**6.** If the Curcios cannot decide between themselves which of them they prefer Zeldes to represent, the court need not approve Zeldes's representation of either.