**Randy W. WILLIAMS, Petitioner–Appellant,**

v.

**Larry MEACHUM, Commissioner of Correction, State of Connecticut, Respondent–Appellee.**

**No. 1476, Docket 91–2053.**

United States Court of Appeals, Second Circuit.

Argued May 13, 1991.

Decided Nov. 7, 1991.

---

See also, 203 Conn. 159, 523 A.2d 1284, and 217 Conn. 419, 586 A.2d 582.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, New Haven, Conn., for petitioner-appellant.

James A. Killen, Asst. State's Atty., State of Conn., Wallingford, Conn., for respondent-appellee.

Before CARDAMONE, WALKER and FRIEDMAN, Circuit Judges.*

WALKER, Circuit Judge:

The sole issue in this appeal from a dismissal of a petition for writ of habeas corpus, 28 U.S.C. § 2254, is whether petitioner Randy W. Williams validly waived his Sixth Amendment right to be represented by conflict-free counsel.

## DISCUSSION

The following facts are not in dispute. In the afternoon of January 24, 1985, a young woman was robbed in her apartment in New Haven, Connecticut. After conversing for a minute or so with her on the sidewalk outside the building, a man followed her into her apartment, pulled out a knife, grabbed the woman's pocketbook, and ran from the apartment.

The woman called police and met with them within minutes, providing a description of the perpetrator. She stated that he had a mark or scar on his left cheek below the eye, "not ... directly under the pupil but over a little bit further on his cheek." She also stated that he was 6' or 6'1" tall, and "trim and fit." Police then brought the complainant to the police station to look at photographs. She looked at approximately two hundred photographs. She picked out two pictures of petitioner, and upon being told that they were the same person, signed and dated one of the photos. Petitioner was eventually arrested on a warrant in early 1985.

Kenneth Rosenthal of the New Haven Public Defender's Office represented petitioner. In April, 1985, petitioner through his counsel moved for a line-up. Petitioner had been incarcerated pending trial with two men, including one George Gould who

* Judge Daniel M. Friedman of the Federal Circuit, sitting by designation.

was awaiting trial on robbery charges, and the two agreed to participate in a lineup. The motion, however, was denied. Trial began in early October, 1985 before Judge Hadden in the Superior Court of Connecticut, District of New Haven. During jury selection, Rosenthal became aware that Gould had some physical similarities to petitioner. Like petitioner, Gould had a scar on the left side of his face (albeit a smaller one than petitioner's) and was of similar height and complexion to petitioner. His "mugshot" also apparently bore some resemblance to that of petitioner. Further, Gould had robbery charges pending against him. At the trial, Rosenthal apparently intended to use this "lookalike" evidence to "cross-examine the detective who had investigated the robbery in an attempt to show that the investigation was incomplete. In addition, he intended to present the evidence as an affirmative defense of third party culpability." *Williams v. Warden*, 217 Conn. 419, 424–25, 586 A.2d 582, 585 (1991).

Rosenthal then discovered, however, that another attorney in the Public Defender's Office, Robert Sweeney, was representing Gould on unrelated robbery charges. Rosenthal and Sweeney conferred, and Sweeney filed a motion to withdraw as Gould's counsel. As petitioner's trial continued, however, it appeared to Rosenthal that Sweeney's motion would not be ruled upon before Rosenthal had to cross-examine the detective. Furthermore, Rosenthal apparently believed that even if Sweeney successfully withdrew, Rosenthal would be ethically prevented from presenting the lookalike evidence. On October 9, 1985, Rosenthal informed petitioner that due to the conflict, he would be unable to present the third party lookalike defense. He told petitioner that petitioner could either continue the trial with Rosenthal's representation but without the defense, or Rosenthal could move to withdraw, and petitioner would receive a new attorney and possibly a new trial.

Rosenthal then told the trial judge of the problem and stated on the record that he saw two possibilities. First, Rosenthal stated that in the event he was retained as an attorney, he would be unable to pursue the lookalike defense, a defense he described in open court as a "powerful defense," "very powerful evidence either in cross-examination, but perhaps more importantly as a part of the defense," and a defense the absence of which would leave a "hole" in the case. Rosenthal stated that the other alternative was for him to withdraw, in which case, he stated, "there would have to be a mistrial declared and a delay in the proceedings." Rosenthal stated that he had discussed the issue with petitioner "in the last couple of hours," and that he was "urging him ... to think about it as long as he needs to," and to "think long and hard about giving up this information." Rosenthal then requested permission to confer with his client. After the conference, the following colloquy ensued:

THE COURT: Mr. Rosenthal, you were conferring in the other room with your client for ten minutes or so.

MR. ROSENTHAL: He has indicated, your Honor, that he wishes to proceed with the trial. I would ask the Court for just five or ten minutes to get my thoughts together in light of the readjustment in where we are....

THE COURT: I want to make sure the record is clear that Mr. Williams wishes to proceed as you've indicated.

I gather, Mr. Rosenthal, you have spent some time before we opened court here, explaining the situation and the problems you were confronted with, with your client. And you've just done it again for ten minutes or so in the side room while we waited here.

Is that correct, Mr. Williams? Has Mr. Rosenthal explained what his—what the problem he has with presenting what we call, for the sake of a better word, a look-alike defense? Has he explained it to you?

THE DEFENDANT: Yes, he explained it, your Honor.

THE COURT: And you understand that if he—that he feels that if he continued to represent you in this case, that he ethically can't bring up that claim in any respect, can't offer evidence on it, or he

can't make it in any way? It's something that the jury will never hear about.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: And despite that, your position is you wish him to continue with this trial and not make that claim, is that what you want done?

THE DEFENDANT: Yes.

THE COURT: Are you sure you understand this now?

THE DEFENDANT: Yes.

THE COURT: Mr. Rosenthal, you are satisfied, based on talking with your client, that he does understand the nature of the problem and exactly what he's doing here?

MR. ROSENTHAL: Yes, your Honor, I am.

THE COURT: Well, then we should go ahead.

At this point, petitioner interjected and asked the court how long it would take to have another trial in the event Rosenthal was to withdraw. The court stated that it did not know whether there would be a mistrial, and in any event the court did not know how long it would take to conclude the case.

After stating that he wished to afford his client "the opportunity to give sufficient thought to this very important decision that he's making," and noting that his client might need "some legal advice" concerning the decision, Rosenthal again asked to confer with his client. After another ten minutes, they returned to the courtroom, and petitioner stated that he wished to proceed.

Petitioner was convicted on October 11, 1985, on charges of robbery and larceny, and sentenced to concurrent terms of twenty years in prison, suspended after ten years with five years of probation. His conviction was affirmed on direct appeal. *State v. Williams*, 203 Conn. 159, 523 A.2d 1284 (1987). He filed a petition for writ of habeas corpus in state court, which was denied. The Connecticut Supreme Court subsequently affirmed that decision. *Williams v. Warden, supra.*

Meanwhile, in June, 1987, Williams, acting *pro se*, filed a petition for habeas corpus in the United States District Court for the District of Connecticut. After counsel was appointed, an amended petition was filed in April, 1988. Following briefing, the petition was dismissed in an opinion dated November 27, 1990 (Robert C. Zampano, *Judge*). Petitioner then filed this appeal.

## DISCUSSION

A defendant's Sixth Amendment right to effective assistance of counsel, applied through the Fourteenth Amendment to the states, includes the right to representation by conflict-free counsel. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942); *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir. 1986); *United States v. Curcio*, 680 F.2d 881, 885 (2d Cir.1982). A defendant may, of course, choose to give up this right to an "attorney of undivided loyalty in order to retain the attorney of his choice," another right guaranteed by the Sixth Amendment. *Curcio*, 680 F.2d at 885. We have stated that the interests of the defendant and the integrity of the judicial system are best protected by leaving this choice to the defendant. *Id.* A defendant's waiver of his constitutional right to conflict-free counsel will be honored if it is a knowing and intelligent choice, "a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

We have stated that we will regard a waiver of conflict-free counsel to be knowing and intelligent when a defendant shows that he is "aware of and understands the various risks and pitfalls,[ ] that he has the rational capacity to make a decision on the basis of this information," and when the defendant states "clearly and unequivocally" that he chooses to be represented by

particular counsel notwithstanding the possible disadvantages accompanying that representation. *Curcio,* 680 F.2d at 888.

Because of the importance of the constitutional right to counsel, we have held that trial courts have a special duty to ascertain that a defendant's waiver is knowing and intelligent. *See also Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (federal courts have independent interest in ensuring that criminal trials appear fair and conform to ethical standards). In *United States v. Curcio,* 680 F.2d 881 (2d Cir.1982) and *United States v. Iorizzo,* 786 F.2d 52, 59 (2d Cir.1986), we established model procedures to follow when a criminal defendant states that he wishes to waive his right to representation by conflict-free counsel. We stated:

> [T]he trial court should: (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

*Iorizzo,* 786 F.2d at 59 (citing *Curcio,* 680 F.2d at 888–90). These procedures are applicable whenever the possibility arises that a counsel's ability to represent a particular defendant has been tainted by a conflict of interest. *Iorizzo,* 786 F.2d at 59; *compare Oppel v. Meachum,* 851 F.2d 34 (2d Cir.), *cert. denied,* 488 U.S. 911, 109 S.Ct. 266, 102 L.Ed.2d 254 (1988) (trial court may rely on counsel's representations in accepting defendant's guilty plea). They ensure that if a defendant chooses to retain a lawyer with a conflict of interest, that choice is fully considered and well-informed.

■ In reviewing a defendant's waiver, however, we are ultimately concerned less with the exact words used by the trial judge than with whether the facts and circumstances of the case indicate that the defendant fully appreciated his situation and made a properly informed decision.

*See United States v. Jenkins,* 943 F.2d 167, 176 (2d Cir.1991).

■ With these principles in mind, we turn to the instant case. The state trial judge concededly did not adhere to the letter of the procedures we laid out in *Curcio.* In the particular facts and circumstances of this case, we nonetheless conclude that petitioner's decision to waive his right to conflict-free counsel was knowing and intelligent and that it therefore passes constitutional muster.

First, the record indicates that petitioner was not deprived of time in which to make his decision. On October 9, 1985, petitioner conferred with his attorney both prior to and during the hearing before the trial judge. While the conferences were not long in duration, we cannot conclude that their short duration alone would invalidate a waiver where there is no sign that the defendant lacked full comprehension of what he was doing. Rosenthal repeatedly stated on the record that he was urging petitioner to "think long and hard" about the decision. Despite this urging, petitioner at no time either personally or through his counsel evinced a need for time to consider the decision further. Instead, petitioner chose to inform Judge Hadden following each conference that he wished to proceed with the trial.

Second, although the judge's questions were not designed to elicit narrative answers, petitioner's answers to the judge's questions leave no doubt that petitioner understood his choice. The judge's questions were detailed and unequivocal. They made abundantly clear that in choosing to retain Rosenthal, petitioner would be giving up the lookalike evidence entirely. Moreover, the judge more than once asked petitioner whether he was certain that he understood the choice he was making. Petitioner replied that he did.

Petitioner argues, however, that the waiver could not have been knowing and intelligent because the trial judge did not inform petitioner of the specifics of the evidence which Rosenthal could have presented. We disagree. Our cases do not require the trial judge to inquire into and

then catalogue every piece of evidence that a defense counsel could present absent a conflict. Rather, it is sufficient for the trial judge to ensure that petitioner clearly knows the "substance of the dangers" of continuing with his present counsel. *Fitzgerald v. United States*, 530 A.2d 1129, 1134 (D.C.1987); *Curcio*, 680 F.2d at 888. Here, petitioner knew just what would result if Rosenthal continued to represent him. Rosenthal would present no lookalike evidence whatsoever. Petitioner could therefore either choose Rosenthal and forego all evidence relating to Gould, the "lookalike," or give up Rosenthal, possibly delaying the trial, for a new lawyer who could present that evidence.

Moreover, petitioner knew the "specifics" of the evidence that was likely to be presented. He knew the identity of the "lookalike"—indeed, he had found the lookalike himself. From his incarceration with Gould, petitioner knew both exactly what Gould looked like and the fact that he was facing robbery charges. Moreover, petitioner had been told by Rosenthal that Gould's mugshot bore a striking resemblance to petitioner's mugshot.

Finally, petitioner undoubtedly recognized the potential significance of the evidence. Neither the trial judge nor Rosenthal downplayed its value. To the contrary, Rosenthal repeatedly emphasized in open court the importance of the lookalike defense to the success of petitioner's case, and the possibility that the absence of the defense would leave a "hole" in the case.

Petitioner also asserts that the waiver was invalid because the trial judge relied too much on Rosenthal, who had a conflict of interest, to inform petitioner of the implications of the conflict, rather than suggesting that petitioner obtain independent counsel. We agree with petitioner that the safer course would have been for the trial judge to have suggested that petitioner obtain independent counsel to advise his decision, and to have afforded him an opportunity to do so. *Cf. Iorizzo*, 786 F.2d at 59 (recognizing possibility that defendant's choice could be tainted by "the very attorney whose capacity to act in the defendant's interest [is] under challenge").

Nonetheless, in the context of the case, we do not find that the trial judge's failure to inform petitioner that he could consult independent counsel invalidates petitioner's waiver. This is not a case where the defense attorney's conflict has subtle implications or where there is reason to suspect that counsel might be less than forthright with his client. Unlike the frequently encountered multiple representation situation, where "the dangers of prejudicial conflict are both ubiquitous and insidious," *Curcio*, 680 F.2d at 887, or the cases in which the attorney may have a duty of loyalty to or special knowledge regarding a prior client, *e.g., Iorizzo, supra*, the consequences of Rosenthal's conflict for petitioner's case were straightforward and easily understood. Petitioner does not argue that an independent counsel, had petitioner chosen to consult one, would have provided anything different in the way of advice or information—and on this record, we are unable to discern any. Indeed, since petitioner's decision whether to retain Rosenthal turned largely upon the way the case was going and the significance of the lookalike evidence, the lawyer who was trying the case was in a better position than any independent counsel to make an informed judgment on those matters.

From the facts and circumstances of this case, we cannot conclude that petitioner's ability to choose whether or not to retain Rosenthal was impaired in any way. Rather, the record fully indicates that petitioner's choice to retain Rosenthal and forego the lookalike defense was a knowing and intelligent one. Accordingly, we uphold the district court's decision finding that petitioner validly waived the right to conflict-free counsel.

## CONCLUSION

The dismissal of the petition for habeas corpus is affirmed.