14-3739-cr(L)
*United States v. Babilonia*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand seventeen.

PRESENT:  DENNY CHIN,
          SUSAN L. CARNEY,
                    *Circuit Judges*,
          BRIAN M. COGAN,
                    *District Judge*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee*,

                                                    14-3739-cr (L)
          v.                                        15-651-cr (Con)
                                                    15-1057-cr (Con)

AISHA BABILONIA, RUBEN DAVIS, AKA
BLODDY RUBEN, AKA FAT MAN, AKA FAT
BOY, ROGER KEY, AKA SEALED DEFENDANT
1, AKA LUCHIE,
                    *Defendants-Appellants*,

---

*         Judge Brian M. Cogan of the United States District Court for the Eastern District of New York, sitting by designation.

RUBEN FERNANDEZ, AKA POPS, RICHARD PALMER, AKA P.O., AKA P.O.P., PEDRO MARQUEZ, AKA BURNS, AKA BERN, ANDREA ISAROON, AKA CHAZ, DENNIS FREDERICKS, AKA ICE, CLAYTON MOLLETTE, AKA KILLER, AKA CLAY, STEVEN HERBERT, AKA ATTA, SHUNDU DAVIS, AKA DAVIS SHUNDU, JAMES MARTIN, DEXTER ERBY, AKA ADDI, AKA DIDA, YOUSSOUF DIOMADE, MOUSTAPHA GUEYE, KHALILAH MATTOCKS, AKA LILS, JOSE CAPRIATA, GEORGE DAVIS, AKA CHEE CHEE, KEITH PURVIS, AKA KIZ,

Defendants.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| FOR APPELLEE: | MARGARET GARNETT, Assistant United States Attorney (Abigail Kurland, Assistant United States Attorney, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, New York. |
|---|---|
| FOR DEFENDANT-APPELLANT AISHA BABILONIA: | ROBERT WILLIAM RAY, Thompson & Knight LLP, New York, New York. |
| FOR DEFENDANT-APPELLANT RUBEN DAVIS: | CHARLES F. WILLSON, Office of the Federal Defender for the District of Connecticut, Hartford, Connecticut. |

Appeal from the United States District Court for the Southern District of New York (Stein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

---

[*]      The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

Defendant-appellant Aisha Babilonia appeals from a September 22, 2014 judgment of the district court, following her guilty plea to conspiracy to commit interstate stalking. Babilonia challenges her sentence of 60 months' imprisonment as procedurally and substantively unreasonable. Defendant-appellant Ruben Davis appeals from a February 26, 2015 judgment of the district court, following his guilty plea to a drug distribution conspiracy and a related firearm charge. Davis argues principally that his convictions should be vacated because the factual basis for his plea was inadequate and he was deprived of his right to conflict-free counsel. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.[1]

1. **Babilonia**

Babilonia's conviction arises out of a murder plot that targeted Babilonia's abusive boyfriend Matthew Allen. Babilonia had told others, including Roger Key, about the abuse she suffered, and Key hired an associate, Jiya Canady, to kill Allen. Babilonia provided Key with a photo of Allen before the attempted murder. On November 16, 2011, Canady drove the shooter, Jose Capriata, to a location in Brooklyn where they had been told Allen was staying, and Capriata shot a man who turned out to be an innocent bystander.

---

[1] We address in an accompanying opinion filed today defendant-appellant Roger Key's appeal of his convictions.

On February 28, 2014, Babilonia pled guilty to a superseding Information charging a federal stalking conspiracy in violation of 18 U.S.C. §§ 371 and 2261A. Pursuant to her plea agreement, the government agreed to dismiss open charges for murder-for-hire conspiracy and attempted murder-for-hire against her. The parties stipulated to a sentencing range of 24 to 37 months' imprisonment. The agreement further noted that neither party would seek a departure, upward or downward, from the stipulated range.

After the conclusion of Key's trial, the district court advised the parties of its intention to consider an upward departure from Babilonia's Guidelines range and requested that the government highlight evidence presented at Key's trial relating to Babilonia's participation in the Allen murder-for-hire plot. The government provided testimony from Canady, a cooperating witness; telephone records and cellsite location maps for Babilonia, Key, and Canady's cell phones; and the photograph of Allen that Babilonia had texted to Key. On September 8, 2014, the district court imposed the maximum statutory sentence of 60 months.

We review the reasonableness of a sentence and the procedure followed at sentencing for abuse of discretion. *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). "A sentence is *procedurally* unreasonable if the district court 'fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the Section 3553(a) factors, selects

4

a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence.'" *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (quoting *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013)). We vacate sentences for substantive unreasonableness "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *Aldeen*, 792 F.3d at 255 (citation and internal quotation marks omitted).

Babilonia's sentence was not procedurally unreasonable. The district court provided the parties with advance notice that it was considering an upward departure under Policy Statement 5K2.21, which provides that the district court "may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement . . . and (2) that did not enter into the determination of the applicable guideline range." U.S.S.G. § 5K2.21. During the sentencing proceeding, the district court explained why it had decided to upwardly depart -- Babilonia had played "a significant role in the plan to stalk and murder Matthew Allen." Babilonia App. 354. The district court's explanation was sufficient. *See United States v. Campbell*, 967 F.2d 20, 26 (2d Cir. 1992) ("[F]or § 5K2.0 departures, the district courts need not make talismanic reference to the [intermediate

5

Guidelines levels], so long as there is careful explanation in the record of the reasons for the extent of the departure.").

Nor did the district court abuse its discretion in denying Babilonia's request for a *Fatico* hearing. "The district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations." *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996) (citations and internal quotation marks omitted).

Babilonia made her request for a *Fatico* hearing after the district court announced that it intended to impose a statutory maximum sentence. The district court gave notice of its intent to consider such a sentence, however, months before the sentencing proceeding. During the sentencing proceeding, the district court gave Babilonia ample opportunity to contest the accuracy of facts that the district court was considering in its determination, and Babilonia voiced her objections to the inferences that the district court drew from those facts. Although the district court concluded, after its discussion of those facts and inferences, that Babilonia played "a significant role in the plan to stalk and murder Matthew Allen," Babilonia App. 354, that determination did not involve a new issue on which Babilonia had not been heard. Accordingly, the

district court did not abuse its discretion or violate Babilonia's due process rights by declining to hold a *Fatico* hearing.

Finally, Babilonia's sentence was not substantively unreasonable. "If the ultimate sentence is reasonable and the sentencing judge did not commit procedural error in imposing that sentence, we will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States v. Fernandez*, 443 F.3d 19, 34 (2d Cir. 2006), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007).

The district court considered the duress that Babilonia was under in light of the abuse she suffered, set forth in the mitigation report, personal statement, and letters she submitted to the court. Considering that evidence in light of all of the Section 3553(a) factors, however, the district court determined that the mitigating effect of the abuse was outweighed by Babilonia's involvement in the plan to kill Allen, which included texting a photograph of Allen to Key before the attempted murder. The fact that the district court did not balance the sentencing factors in the way Babilonia desired does not render the sentence unreasonable.

2.    **Davis**

A.    Factual Basis for Plea

Davis argues that his guilty plea to aiding and abetting a Section 924(c) offense lacked a sufficient factual basis. On October 1, 2013, Davis pleaded guilty to

7

Count One (conspiracy to distribute narcotics) and Count Two (using, carrying, and possessing firearms, and aiding and abetting the same, in connection with the narcotics conspiracy) of the second Superseding Indictment. During the plea hearing, Davis described in his own words his conduct related to the two charged crimes. To that end, the district court posed a series of questions to Davis, the government, and Davis's counsel. At one point in the colloquy, the district court offered to adjourn the hearing and resume in the morning after Davis had been able to confer further with his counsel; Davis, through his attorney, declined the offer. The government then proffered what it planned to prove at trial for both counts. Davis raised no objection to the government's recitation and subsequently pled guilty to both counts. The district court confirmed that Davis was entering his plea knowingly and voluntarily and, finding that there was a factual basis for the plea, accepted Davis's plea.

"[W]here a defendant raises on appeal a claim of Rule 11 error that he did not raise in the district court, that claim is reviewable only for plain error." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006).[2] The defendant must demonstrate "that (1) there was error, (2) the error was 'plain,' [and] (3) the error prejudicially affected his 'substantial rights.'" *Id.* (internal quotation marks omitted).

---

[2]      We have previously used a "modified plain error" analysis where a purported error results from a supervening decision. *United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016). We need not address whether a plain error or modified plain error analysis should apply here, however, because our conclusion would be the same under either approach. *See United States v. Robinson*, 799 F.3d 196, 200 n.1 (2d Cir. 2015).

8

Federal Rule of Criminal Procedure 11(b)(3) provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). As long as the factual basis for the plea is put on the record, the judge may look to answers provided by counsel for the defense and government, the presentence report, "or . . . whatever means is appropriate in a specific case." *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998) (quoting *Maher*, 108 F.3d at 1524).

In *Rosemond v. United States*, 134 S. Ct. 1240 (2014), the Supreme Court "clarif[ied] the relationship of the aiding and abetting statute . . . and 18 U.S.C. § 924(c)'s prohibition against using a firearm during a crime of violence," instructing that aiding and abetting a Section 924(c) offense "requires both an affirmative act furthering the underlying offense and an intent to facilitate that offense's commission." *United States v. Robinson*, 799 F.3d 196, 199-200 (2d Cir. 2015) (citing *Rosemond*, 134 S. Ct. at 1245). The defendant's affirmative act need not "specifically facilitate the use of the firearm" -- rather, "the . . . requirement is met when the defendant facilitates any element of the underlying offense." *Id.* at 200. The intent requirement is satisfied when the defendant has advance knowledge that one of his confederates will carry a gun. *Rosemond*, 134 S. Ct. at 1249.

There was a sufficient factual basis for the district court to accept Davis's plea at the time of the plea hearing based on Davis's admissions alone. During the hearing, Davis admitted that (1) over the course of the drug conspiracy, he was aware that other co-conspirators possessed firearms in furtherance of the conspiracy; (2) he benefitted from his co-conspirators carrying firearms; (3) he intended other co-conspirators to carry and possess weapons in connection with his drug business; (4) he had access to the firearms from time to time; (5) the firearms were kept in numerous places; and (6) the firearms were used for protection of the drug business.

Davis conceded his participation in the underlying narcotics conspiracy, an element of a Section 924(c) offense, thereby satisfying the affirmative act requirement. He also allocuted that he was aware that his co-conspirators carried firearms in connection with the conspiracy, benefiting and protecting his drug business, and that he intended they do so. Because Davis indicated that he continued to participate in the conspiracy with the knowledge that his co-conspirators were using or carrying guns, the advance knowledge requirement was met. *See id.* at 1250 n.9 (noting that advance knowledge can be inferred "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate"). Thus, there was a factual basis for both the affirmative act and intent components of aiding and abetting a Section 924(c) offense. The government's proffer of its proof on Count Two further supported the district court's conclusion that there was a factual basis for the plea.

Finally, Davis argues in passing that he was pressured to enter the plea due to the late hour and pressure from his counsel, a claim that is conclusory and belied by the record. Accordingly, we identify no error, let alone plain error, in the district court's acceptance of Davis's plea.

B.     Conflict-Free Counsel

Davis also argues that he was deprived of his right to conflict-free counsel, necessitating vacatur of his convictions. Specifically, Davis contends that the district court erred by (1) failing to provide independent counsel for Davis to consult regarding the potential conflict and (2) not providing sufficient time for Davis to contemplate the consequences of waiver.

The question of whether a defendant's Sixth Amendment right to effective assistance of counsel is violated "is a mixed question of law and fact requiring *de novo* review." *United States v. Kliti*, 156 F.3d 150, 152-53 (2d Cir. 1998). The district court has "a special duty to ascertain that a defendant's waiver is knowing and intelligent." *Williams v. Meachum*, 948 F.2d 863, 867 (2d Cir. 1991). In *United States v. Curcio,* 680 F.2d 881 (2d Cir. 1982), we set forth procedures to be applied when there is a potential concern regarding the defendant's right to representation by an attorney without a conflict of interest. The district court is to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and

11

> contemplate the risks after encouraging him or her to seek advice from independent counsel.

*United States v. Iorizzo,* 786 F.2d 52, 59 (2d Cir. 1986) (citing *Curcio,* 680 F.2d at 888-90).

"In evaluating a district court's fidelity to this guidance, however, 'we are more concerned with whether the defendant appreciated his predicament and made a properly informed choice than we are with whether the trial judge recited any particular litany of questions.'" *United States v. Buissereth*, 638 F.3d 114, 117 (2d Cir. 2011) (quoting *United States v. Jenkins,* 943 F.2d 167, 176 (2d Cir. 1991)).

The district court held *Curcio* hearings regarding two potential conflicts with Anthony Ricco's representation of Davis on March 13, 2013, before the guilty plea, and December 17, 2014, before the sentencing. As an initial matter, at each hearing, Davis waived the ability to argue in the future that he did not have effective assistance of counsel due to Ricco's conflicts. He offers no reason to ignore those waivers here.

Nevertheless, the record reveals that the district court ensured that Davis was fully informed of the potential conflicts of interest involving his attorney and that his subsequent waivers were both "knowing" and "intelligent." *Williams*, 948 F.2d at 867. At each hearing, the district court first advised Davis of the problems that would arise from the potential conflict, including hypothetical examples of ways that Ricco would be unable to zealously represent Davis due to his obligations to Davis's brother. As the district court made each point, Davis affirmatively indicated his understanding.

12

Furthermore, the district court determined through closed and open-ended questioning that Davis understood the possible risks before accepting his waiver of the conflict. Davis's responses to the district court's hypotheticals demonstrated that he appreciated the potential risks arising from Ricco's prior representation of Davis's brother. At the second hearing, Davis stated that he knew that Ricco previously represented Allen, the target of the murder-for-hire conspiracy, and that "[Ricco] might have found out something from Mr. Allen that could help [Davis] in during [his] sentencing in this case right here." Davis App. 80. When the district court explained that Ricco would not be able to use such information to help Davis, Davis responded, "I understand everything. I understand." *Id.*

Finally, the district court acknowledged that it could not predict how the conflict would affect Davis and offered Davis the opportunity to reflect on his decision after consulting with independent counsel. Davis now argues that the district court erred by not appointing counsel, citing Davis's lack of education and sophistication, despite Davis declining the district court's offer to do so during the hearing. Nothing about Davis's background indicates that he would have been unable to appreciate the seriousness of the decision without consulting with independent counsel. *See, e.g., United States v. Lussier*, 71 F.3d 456, 463 (2d Cir. 1995) (dismissing similar argument by a defendant with only an eighth grade education).

Although the hearings were not long, there is no indication that Davis had insufficient time to consider the risks of proceeding with Ricco as his counsel. The district court offered Davis the opportunity to adjourn the hearing before deciding to waive the conflict. At each proceeding, Davis indicated that he did not wish to consult with counsel, and that he did not wish to take any additional time to reflect on his decision. Accordingly, we conclude that the district court did not err in following the procedures outlined in *Curcio* at either hearing, and that Davis knowingly and intelligently waived his right to conflict-free representation.[3]

We have considered all of Babilonia and Davis's additional arguments and find them to be without merit. For the reasons stated herein, the judgments of the district court are **AFFIRMED**. Babilonia's motion for bail pending appeal is **DENIED** as moot.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

---

[3] Davis argued in his opening brief that his sentence was procedurally and substantively unreasonable. In his plea agreement, however, Davis waived his right to appeal a sentence of fewer than 322 months' imprisonment. On appeal, he does not argue that the waiver is invalid or unenforceable, and he was sentenced to 228 months' imprisonment. Accordingly, we affirm his sentence. *See, e.g., United States v. Riggi*, 649 F.3d 143, 147-49 (2d Cir. 2011).

14