**UNITED STATES of America, Appellee,**

v.

**Michael MALPIEDI, Joseph Labianca, Robert Goldfine, Lucille Malpiedi Goldfine, and Linda Citrynell, Defendants,**

**Stephen Delli Bovi, Defendant–Appellant.**

No. 1507, Docket 94–1632.

United States Court of Appeals, Second Circuit.

Argued June 15, 1995.

Decided Aug. 9, 1995.

Alan S. Futerfas, New York City (Ellen B. Resnick, of counsel), for defendant-appellant.

Stanley J. Okula, Jr., Asst. U.S. Atty. for the E.D.N.Y. (Zachary W. Carter, U.S. Atty., James Orenstein, Asst. U.S. Atty. for E.D.N.Y., of counsel), for appellee.

Before: WINTER, MAHONEY and JACOBS, Circuit Judges.

WINTER, Circuit Judge:

Stephen Delli Bovi appeals from his convictions by a jury before Judge Raggi for fraud and obstruction of justice. He argues that his trial counsel rendered constitutionally ineffective assistance due to a conflict of interest arising from counsel's previous representation of an important government witness. We vacate the judgment of conviction and remand for further proceedings.

## BACKGROUND

Delli Bovi was convicted of two counts of wire fraud in violation of 18 U.S.C. § 1343, five counts of interstate transportation of checks taken by fraud in violation of 18 U.S.C. § 2314, and one count of obstruction of justice in violation of 18 U.S.C. § 1503. The fraud charges arose out of an alleged kickback scheme in which Delli Bovi, an outside contractor, submitted inflated invoices to the Twenty–First Century Corporation and shared the illicit profits with certain executives of that company. The obstruction of justice charge concerned certain checking records that had been subpoenaed by a grand jury from one of Delli Bovi's compa-

nies. A number of cancelled checks did not match copies retained by the bank when the checks were cashed, allegedly because they had been altered before being turned over to the grand jury.

At trial, Susan Goldfine, Delli Bovi's sister-in-law and part-time secretary and the daughter of two co-defendants, was an important government witness. Goldfine testified that she saw Delli Bovi alter check stubs when she assisted him in gathering documents in response to the grand jury subpoena. This testimony was direct evidence of Delli Bovi's obstruction of justice and of his consciousness of guilt of the other charges.

In an appearance before the grand jury, Goldfine had testified as a custodian of records to authenticate the subpoenaed documents, including the altered checking records. Prior to testifying, Goldfine had reviewed copies of the documents in the office of Delli Bovi's attorney, John Kelly. Kelly then accompanied Goldfine to the grand jury, waiting outside the grand jury room until her appearance had been completed. Goldfine considered Kelly to be her lawyer. She later stated that she had asked Kelly questions about the grand jury proceedings and that he answered those questions.

In her testimony before the grand jury, Goldfine falsely claimed not to recognize Delli Bovi's handwriting. She also gave testimony regarding the collection of documents in response to the grand jury subpoena. This testimony failed to disclose any tampering with the documents by Delli Bovi.

More than a year later and after being granted immunity, Goldfine made a second grand jury appearance in which Kelly did not represent her. On this occasion, she testified that she did not know what the initials "BG" stood for when they were in fact a reference to her father, who was then under indictment in connection with the kickback scheme. She again failed to mention Delli Bovi's tampering with the documents, although a direct question on that subject was not asked.

The government decided to call Goldfine as a witness in Delli Bovi's trial to testify as to routine custodial matters. After this decision was made and some weeks before trial, Goldfine disclosed to the government that she had seen Delli Bovi alter the documents. Her importance as a government witness was thus greatly enhanced. Nevertheless, the government failed to alert the district judge to Kelly's role in Goldfine's first grand jury appearance until the morning that Goldfine was to testify. At that point, the government informed the court that Goldfine would give "some fairly powerful testimony against [Delli Bovi]" and that "Mr. Kelly had represented her in the past." The delay in informing Judge Raggi appears not to have been an oversight but the result of the government's desire to use Kelly's prior representation of Goldfine to its advantage.[1] The government thus informed the district court that it would elicit from Goldfine testimony that Kelly had represented her at the first grand jury appearance. It hoped that evidence of her close association with Kelly and Delli Bovi would "bolster her testimony and lend credence to it."

Kelly claimed he did not raise the matter earlier because he believed that he had no attorney-client relationship with Goldfine and that she was therefore "fair game" for cross-examination. Judge Raggi was understandably displeased that she had not been informed of this problem earlier.

Before Goldfine testified, the government and the defense agreed that Kelly would question Goldfine only about whether she was alone with the documents in a conference room while preparing for the first grand jury appearance and that the government would elicit from her only that Kelly had accompanied her to that proceeding. Nevertheless, Kelly's cross-examination of Goldfine strayed into detailed questions concerning the first grand jury appearance. Judge Raggi interrupted Kelly's cross-examination and, outside the presence of the jury, conducted an inquiry into the nature of Kelly's representation of Goldfine. Kelly stated that "in [his] mind,"

---

1. At oral argument, the government took the position that it delayed bringing Kelly's conflict to Judge Raggi's attention because it believed Kelly's assertion that he had not represented

Goldfine. However, the prosecutor's statement to Judge Raggi indicated in the clearest fashion the government's understanding that Kelly had represented Goldfine.

he was never Goldfine's lawyer. However, Goldfine stated that Kelly had answered her questions about the grand jury proceeding and that she had believed that Kelly was her lawyer.

Judge Raggi then chastised Kelly for not recognizing that he had "an ethical problem." In response, Kelly stated, "Judge, I will certainly move away from that at this point," apparently a reference to the line of questioning about Goldfine's first grand jury appearance.

Goldfine, through another lawyer, thereafter invoked the attorney-client privilege. Judge Raggi prohibited Kelly from making arguments about Goldfine's testimony in the first grand jury proceeding, forbidding him from using "any of the evidence that was developed because Mr. Kelly represented Ms. Goldfine in any way to suggest wrongdoing on her part. He owes her . . . the loyalty of an attorney representing a client during that period of time." Kelly agreed to limit his argument, but stated:

> But there—the one thing I'd—I keep getting into hot water—that I wanted to touch upon now is, I was intending, and I guess I'm asking for guidance on this, to use her first grand jury testimony for impeachment purposes in terms of her being asked about—there were a couple of questions about her collecting the records and her being with Stephen Delli Bovi and what they did at that time. There is no mention certainly of records being changed or her observing anything Mr. Delli Bovi did.

After further discussion with the court and Goldfine's counsel, Kelly agreed not to cross-examine Goldfine about her first grand jury appearance and stated that cross-examination about the second grand jury appearance would suffice.

During the proceedings described above, the district court and the parties focused exclusively on Goldfine's attorney-client privilege. Delli Bovi's right to conflict-free counsel was not raised until the end of the trial day when Judge Raggi inquired whether Delli Bovi was satisfied with Kelly's cross-examination of Goldfine. Although Delli Bovi responded that he was satisfied, it is undisputed that this was not a valid waiver under *United States v. Curcio*, 680 F.2d 881 (2d Cir.1982).[2]

After his conviction, Delli Bovi, represented by new counsel, informed the district court that he would appeal on the ground that Kelly's conflict of interest deprived Delli Bovi of effective assistance of counsel. Judge Raggi suggested that Delli Bovi pursue this claim first as a motion for a new trial, so that a record could be developed in the district court. The parties agreed to this suggestion, and the district court conducted an evidentiary hearing at which Kelly testified.

After the hearing, Judge Raggi read her findings into the record. The district court found Kelly to be a "totally credible" witness at the hearing and credited his testimony that he had made a strategic decision not to cross-examine Goldfine about the first grand jury appearance. The district court determined that Kelly's representation of Delli Bovi was not adversely affected by the conflict because (i) Kelly's cross-examination of Goldfine was, over all, very effective, (ii) Kelly was able to "indirectly" establish that Goldfine's grand jury testimony was inconsistent with her testimony at trial, (iii) Kelly effectively impeached Goldfine with other ev-

---

**2.** In *United States v. Levy*, 25 F.3d 146, 153 (2d Cir.1994), we stated that once a district court is apprised of even a possible conflict of interest, it is obligated to investigate the conflict. If the court determines that an actual or potential conflict exists, it must either (i) disqualify the defense attorney if the conflict is so severe that no rational defendant could knowingly and intelligently desire that lawyer's representation, or (ii) secure a valid waiver under *Curcio*. Here, the district court fulfilled its inquiry obligation by questioning Kelly and Goldfine about the nature of their previous relationship. However, there was no *Curcio* hearing. In *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir.1986), we summarized the requirements of *Curcio* as applicable in the context of the present case. *Curcio* requires the district court to (i) advise the defendant of the dangers arising from the particular conflict and ascertain that he or she understands the risks involved, (ii) encourage the defendant to seek advice from independent counsel and provide time to digest and contemplate the risks, and (iii) secure a knowing waiver of the right to conflict-free counsel before proceeding. *See Iorizzo*, 786 F.2d at 59; *Curcio*, 680 F.2d at 888–90.

idence that was stronger than the grand jury testimony, and (iv) Kelly established that Goldfine had lied in the second grand jury proceeding, rendering her lies in the first proceeding cumulative for the purposes of impeaching her credibility. Accordingly, the district court denied Delli Bovi's motion for a new trial. This appeal followed.

## DISCUSSION

■ The principles to be applied are familiar ones. Every defendant is entitled to "representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). An actual, as opposed to a potential, conflict of interest exists "when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 1722 n. 3, 64 L.Ed.2d 333 (1980)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994).

In the instant matter, Kelly had an actual conflict of interest because his duty to Goldfine conflicted with Delli Bovi's interest in a full and effective cross-examination of Goldfine. Goldfine was a key government witness. Her testimony as to document tampering was direct evidence of obstruction of justice and also demonstrated Delli Bovi's consciousness of guilt of the other charges. It was therefore in Delli Bovi's interest to have his attorney conduct a thorough, no-holds-barred cross-examination of Goldfine. Kelly was unable to cross-examine Goldfine on her testimony during her first grand jury appearance because of his obligations as her prior attorney and her invocation of the attorney-client privilege.

■ Although a defendant generally is required to demonstrate prejudice to prevail on a claim of ineffective assistance of counsel, *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), prejudice is presumed when counsel is burdened by an actual conflict of interest. *Id.* at 692, 104 S.Ct. at 2067; *United States v. Iorizzo,* 786 F.2d 52, 58 (2d Cir.1986). This presumption is "fairly rigid." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Moreover, "once the defendant establishes that there was an actual conflict, he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict." *Iorizzo,* 786 F.2d at 58 (quoting *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718). To prove a lapse in representation, a defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *United States v. Levy,* 25 F.3d 146, 157 (2d Cir.1994) (quoting *Winkler,* 7 F.3d at 309).

This is not a test that requires a defendant to show that the alternative strategy or tactic not adopted by a conflicted counsel was reasonable, that the lapse in representation affected the outcome of the trial, or even that, but for the conflict, counsel's conduct of the trial would have been different. Rather, it is enough to show that a conflict existed that "was inherently in conflict with" a plausible line of defense or attack on the prosecution's case. *Levy,* 25 F.3d at 157. Once such a showing is made, *Strickland*'s "fairly rigid" presumption of prejudice applies.

The test is a strict one because a defendant has a right to an attorney who can make strategic and tactical choices free from any conflict of interest. An attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics is hardly an objective judge of whether that strategy or tactic is sound trial practice. Counsel's inability to make such a conflict-free decision is itself a lapse in representation.

We do not exclude, of course, the possibility that a foregone strategy or tactic may be so insubstantial that even the most ardent and talented, conflict-free advocate would likely have avoided it. Nor do we exclude the possibility that the foregone strategy or tactic might be so clearly against the defendant's interest that unconflicted counsel would never pursue it. Under such circumstances, we would conclude that no lapse of representation occurred.

470

Moreover, we emphasize that the government can protect itself by informing the district judge of potential conflicts at the earliest possible moment. The court can then secure a waiver under *Curcio* or disqualify defense counsel under *Levy*. The government can itself seek to disqualify defense counsel because of a conflict. *See Levy*, 25 F.3d at 157. Indeed, it frequently does so. *See, e.g., United States v. Locascio*, 6 F.3d 924, 930–35 (2d Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *United States v. Rahman*, 861 F.Supp. 266 (S.D.N.Y.1994).

■ Cross-examination of Goldfine about testimony at her first grand jury appearance was a tactic that was entirely plausible but barred by Kelly's conflict of interest. The record clearly shows that Kelly began this line of cross-examination, and the district court quite properly interrupted him. Kelly stated that he wished to impeach Goldfine's testimony with her testimony before the first grand jury but needed guidance from the court. When the court's reaction was decidedly negative, Kelly retreated. The foregone opportunity involved cross-examination regarding not only Goldfine's failure to give the grand jury the damaging testimony she offered at trial, but also her perjury regarding Delli Bovi's handwriting.

Even if we accept Kelly's testimony that he had strategic reasons for not cross-examining Goldfine about her first grand jury appearance—an assertion not entirely reconcilable with his seeking a ruling from the court on the matter—Delli Bovi had a right to a lawyer who could make strategic and tactical decisions free from any conflict of interest. Kelly was clearly in no position to make an objective, professional decision regarding cross-examination as to Goldfine's first grand jury testimony. Indeed, that option was not his to exercise.[3]

We give no weight to the post-trial hearing or findings regarding the need for cross-

examination on Goldfine's first grand jury appearance or Kelly's thought processes in that regard. First, the applicable standard requires only the demonstration of a conflict inconsistent with a plausible trial strategy or tactic. Cross-examination regarding Goldfine's failure to mention document tampering and her perjury as to Delli Bovi's handwriting, even if not mandatory, was certainly a plausible strategy. Second, after-the-fact testimony by a lawyer who was precluded by a conflict of interest from pursuing a strategy or tactic is not helpful. Even the most candid persons may be able to convince themselves that they actually would not have used that strategy or tactic anyway, when the alternative is a confession of ineffective assistance resulting from ethical limitations.

We therefore vacate the judgment of conviction and remand for further proceedings. Given our disposition of this appeal, we need not address Delli Bovi's contention that his sentence should be altered.

---

**3.** The events here were largely a replay of *Iorizzo* by both the defense and the government. We trust that it will not take yet another decision of this court to induce counsel for a potential defendant to refrain from assisting or accompanying a witness who testifies before an investigatory tribunal looking into the client's conduct. We also trust that it will not take another decision to induce the government to bring any conflict of interest to the district court's attention, rather than remaining silent in order to gain a tactical advantage from that conflict.