**UNITED STATES of America,**

**v.**

**Mohamed H. MUFLAHI, Defendant.**

**United States of America,**

**v.**

**Abdulizzez NASR, Defendant.**

Nos. 02–CR–92A(F), 03–M–1105.

United States District Court,
W.D. New York.

April 15, 2003.

Michael A. Battle, United States Attorney, Maryellen Kresse, Assistant United States Attorney, of Counsel, Buffalo, NY, for the Government.

Bouvier, O'Connor, LLP, George R. Blair, Jr., Michael J. Likoudis, of Counsel, Buffalo, NY, for Defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

The above referenced Indictment was referred to the undersigned for all pretrial matters by order of Hon. Richard J. Arcara dated June 20, 2002 (Doc. No. 6); the referenced Complaint, filed May 30, 2002, is before the court pursuant to 28 U.S.C. § 636(a)(1). Each matter is presently before the court on the Government's motions, filed January 7, 2003, to disqualify counsel (Doc. No. 16).

## BACKGROUND and FACTS

These cases arise from an undercover investigation conducted by the United States Department of Agriculture into allegations of food stamp fraud occurring at a small convenience food and beverage store, Five Star Food and Beverage Center, located in Buffalo, New York, and owned by Anwar H. Muflahi, a defendant charged in 02–CR–91A(F), at which Defendants Mohamed H. Muflahi and Abdulizzez Nasr were employees. Defendant Mohamed Muflahi and Anwar Muflahi are brothers. Government's Memorandum of Law in Support at 2.

Defendant Mohamed H. Muflahi ("Mohamed Muflahi" or "Muflahi") is charged in a indictment alleging two counts of food stamp fraud in violation of 7 U.S.C. § 2024(b) based on transactions occurring on March 4, 2002 and May 1, 2002, respectively. Defendant Abdulizzez Nasr

("Nasr") is charged in a Criminal Complaint filed May 30, 2002 (Doc. No. 1) with violating 7 U.S.C. § 2024(b) on January 3, 2002 and March 6, 2002, respectively. In a related case, Anwar H. Muflahi is also charged in a five count Indictment, 02–CR–91A(F), with violations of 7 U.S.C. § 2024(b) on December 5, 2001, February 5, 2002, February 6, 2002, March 5, 2002, and April 3, 2002. At their respective arraignments and initial appearance Defendants informed the court they had retained Michael Likoudis and George Blair, Jr. as their attorneys.

Because all of the alleged unlawful food stamp redemptions occurred at the same store, Five Star Food and Beverage, and despite the fact that Defendants were not jointly charged and the alleged violations occurred on different dates, the court conducted, on June 18, 2002, a hearing pursuant to Fed.R.Crim.P. 44(a) and *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

At the hearing, in which Defendants participated in English, the court advised Defendants of the potential risks associated with joint representation. At that time, it was represented to the court that Defendants and the Government had entered into plea negotiations and that a plea offer by which Defendants would plead to a felony count of violating 7 U.S.C. § 2024(b) was being considered.

Subsequently, defense counsel was informed by the Government that the Government's plea posture had changed and that Muflahi and Nasr, employees of the store owner Anwar Muflahi, were offered misdemeanor pleas on the condition that they agree to cooperate including testifying against Anwar Muflahi. Government's Memorandum at 3. The Government further advised counsel that such develop-

ment created a disqualifying conflict, a need for separate counsel and requested an appearance before the court. *Id.* At a pretrial conference scheduled on the Government's suggestion of disqualification, conducted November 5, 2002, Michael P. Stuermer, Esq. and Paul J. Cambria, Jr., Esq. entered an appearance on behalf of Anwar Muflahi and Attorneys Blair and Likoudis withdrew from their representation of Anwar Muflahi. *Id.* at 4. Although Mr. Blair stated that he believed an actual conflict existed as to his and Mr. Likoudis's continued representation of Mohamed Muflahi and Nasr, a further adjournment was granted to enable the parties to discuss the issue and report back to the court. *Id.*

On December 19, 2002, Mr. Blair informed the court and the Government that he now believed no basis for his withdrawal[1] was presented and declined the Government's suggestion that he do so. Government's Memorandum at 5. Based on the conditional nature of the Government's plea offer, the Government maintained an actual conflict was present and orally moved to disqualify Messrs. Blair and Likoudis. *Id.* Following oral argument, the court requested written briefs. *Id.*

The Government's written motions to disqualify were, as noted, filed January 7, 2003 in each case along with its Memorandum of Law in Support ("Government's Memorandum"). Defendants' Memoranda in Opposition were filed in each case, February 6, 2003 ("Defendants' Memoranda"). Further oral argument was deemed unnecessary. Based on the following, the Government's motion is GRANTED.

## DISCUSSION

Although the Sixth Amendment guarantees to an accused the right to have and

---

**1.** Mr. Blair represents both himself and Mr. Likoudis for the purposes of the Government's motion.

choose counsel, the right is not unconditional. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The court retains the duty to assure that such choices do not create risk that counsel operate with actual or potential conflicts of interest so as to impair the effectiveness of representation. *Id.* Indeed, this overriding obligation places courts in the dilemma of creating reversible error for failure to prevent ineffective assistance of counsel claims, on the one hand, and interference with a defendant's right to select counsel of his choice, on the other. *Id.* at 161–62, 108 S.Ct. 1692. The perils of deciding either way may make the court's decision difficult but it cannot paralyze the court into inaction, as the court is required to carry out its inherent duty to supervise the quality of representation in its proceedings. *Id.* at 163, 108 S.Ct. 1692.

■■■■ "A defendant's Sixth Amendment right to the effective assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest." *United States v. Blount*, 291 F.3d 201, 210 (2d Cir.2002) (citing *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1241, 152 L.Ed.2d 291 (2002)). The Sixth Amendment right to counsel is not absolute; although a defendant's choice of counsel is presumptively favored, a determination of disqualification by the court will be sustained where the court, in its sound discretion, finds either an actual conflict or a serious potential for conflict. *Wheat, supra,* at 164, 108 S.Ct. 1692. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir.2002) (internal quotation omitted), *cert. denied*, 511 U.S. 1022 (1994).

■■■ Once the court is advised of the possibility of a conflict of interest, the court is obligated to "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir.1994). Nevertheless, dual or subsequent representation, without more, does not violate the Sixth Amendment. *Cuyler v. Sullivan*, 446 U.S. 335, 346–349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *see United States v. Stantini*, 85 F.3d 9, 14 (2d Cir.) ("Dual representation in separate but related proceedings, without more, does not trigger the inquiry obligation."), *cert. denied*, 519 U.S. 1000, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996). Further, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification in the particular circumstances of the case. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983) (moving party bears heavy burden of proving facts required for disqualification of counsel); *United States v. Phillips*, 699 F.2d 798, 801–02 (6th Cir. 1983) ("The prosecution has no right to deny a defendant in a criminal case representation by counsel of his choice in the absence of a showing that some important interest will be adversely affected by permitting chosen counsel to proceed"), *overruled on other grounds, United States v. Tosh*, 733 F.2d 422 (6th Cir.1984); *Sauer v. Xerox Corp.*, 85 F.Supp.2d 198, 199 (W.D.N.Y.2000) ("The burden is on the movant to demonstrate that an attorney should be disqualified.").

■■■ A conflict of interest may be based on a defendant's attorney's prior representation of a government witness who is to appear on the Government's behalf against the defendant. *Blount, supra,* at 211 (citing *Mickens, supra,* at 1245); *United*

*States ex rel. Stewart on Behalf of Tineo v. Kelly,* 870 F.2d 854, 857 (2d Cir.1989). Whether to disqualify counsel involves the defendant's right to a fair trial, which includes balancing the interests of the former client and witness with the interests of the government and the public, against the defendant's right to representation by the counsel of his choice. *Stewart, supra,* at 856. Disqualification should result where defense counsel's prior representation of a trial witness carries with it a substantial risk that "vigorous cross-examination" of the witness may be impaired to the disadvantage of the defendant so as to avoid improperly using information previously acquired from the witness. *Wheat, supra,* at 164, 108 S.Ct. 1692; *Stewart, supra,* at 857.

As such, "[t]he trial court must evaluate the interests of the defendant, the government, the witness and the public in view of the circumstances of the particular case and perform a 'balancing test' to determine if there is either an actual conflict or a serious potential for conflict requiring disqualification." *United States v. Falzone,* 766 F.Supp. 1265, 1272 (W.D.N.Y. 1991) (citing *U.S. v. James,* 708 F.2d 40, 44 (2d Cir.1983)).

■ An actual conflict of interest arises were the loyalties or interest of counsel and the represented defendant "diverge with respect to a material factual or legal issue or to a course of action." *Schwarz,* 283 F.3d at 91 (quoting *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993)). Where an actual conflict exists, prejudice to the defendant is presumed. *Schwarz,* 283 F.3d at 91 (citation omitted). To gain reversal and retrial, a defendant need only demonstrate that his attorney "actively represented conflicting interests" and that the "actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A defendant

satisfies this requirement by pointing to "some lapse in representation," *Cuyler,* 446 U.S. at 349, 100 S.Ct. 1708, *i.e.,* "that some 'plausible alternative defense strategy or tactic might have been pursued' that 'was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *United States v. Levy,* 25 F.3d 146, 157 (2d Cir.1994) (quoting *Winkler,* 7 F.3d at 307).

To establish that counsel labored under a prohibited conflict, a defendant need not prove the quality of representation directly affected the outcome of the case, or that counsel's defense strategy would have been different if the conflict did not exist. *United States v. Malpiedi,* 62 F.3d 465, 468 (2d Cir.1995). Only defense strategies or tactics "so insubstantial" which are forgone by counsel who attempt to effectively represent an accused may be ignored by the court as a justification to sustain a challenged conviction despite the presence of a disqualifying actual conflict. *Id.* Moreover, protestations by such counsel that forgone tactics were done for strategic reasons will not avoid vacatur of the conviction and probable retrial. *Id.* at 470.

■ Further, where significant actual conflicts arise during a criminal representation, and no rational defendant would knowingly and intelligently waive such a barrier to his right to effective assistance of counsel, the court will not permit the waiver and must disqualify counsel from the representation. *United States v. Lussier,* 71 F.3d 456, 461 (2d Cir.1995); *see also Schwarz, supra,* at 95–96 (citing cases). Among the situations where such disqualification is likely to arise, "[t]he most typical is where an actual conflict arises from a multiple representation." *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). Finally, even if the conflict has not occurred but is merely potential, the court may in its discretion disqualify

counsel based on its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra,* at 160, 108 S.Ct. 1692.

■ Here, the Government contends that because a misdemeanor plea has been tendered to Defendants on condition that if each testify against Anwar Muflahi, counsel cannot objectively evaluate the strength of the Government cases against Mohamed Muflahi and Nasr because if one Defendant seeks to accept the misdemeanor plea as proposed by the Government such Defendant would necessarily become an adverse witness against the remaining Defendant, a party also represented by the present attorneys. Government's Memorandum at 6–7.

In opposition, Blair and Likoudis argue that as their former client, Anwar Muflahi, has informed the court he has no objection to counsel continuing to represent Defendants there is no fear to their continued representation of both Defendants.[2] Defendant's Memoranda at 2. Defendants further argue that until either of them may choose to accept the Government's plea offer, no conflict is present and that Defendants presently wish to proceed to trial. *Id.* at 3. Finally, Defendants contend that based on the *Curcio* hearing, they have been fully advised of the risks of continuing with their present counsel and have waived such risks, and that granting the Government's motion would allow the government to control the selection of counsel by making plea offers based on cooperation against co-defendants. *Id.* at 4–5.

In this case, the court conducted an *Curcio* hearing finding Defendants could, and did, waive what appeared to be a potential conflict. However, as noted, at that time, the parties represented an expectation that the case was likely to resolve in pleas on behalf of Anwar Muflahi, Mohamed Muflahi and Nasr. Now, as the Government states, the interests of the Defendants have been altered by virtue of the Government's misdemeanor plea offers to Mohamed Muflahi and Nasr on condition they testify against Anwar Muflahi at a trial on his felony charges and each other, if necessary. Government's Memorandum at 3. Thus, in this altered posture, Mohamed Muflahi and Nasr must assess their chances of success in defending, and thereby avoiding conviction on, the present felony charges at trial against the advantage of securing a misdemeanor disposition, with the associated significantly less harsh sentencing possibilities, by plea, against the requirement they testify against Anwar Muflahi at his felony trial or each other.

It follows from this circumstance that where, as here, the same lawyers, Mr. Blair and Mr. Likoudis, represent both Defendants that they can not assess objectively the relative advantages and disadvantages to each Defendant on the question of whether to go to trial on their respective felony charges as in order to accept the plea offer each must be willing to testify both against Anwar Muflahi *and each other,* if necessary. As such, each Defendant's individual interest in avoiding a felony conviction with a five year maximum sentence is advanced only to the disadvantage of the other, assuming, as counsel say is the case, both Defendants wish to go to trial. The loyalties and duty of independent judgment that counsel owe to each Defendant are therefore in absolute conflict—to properly advise each De-

---

2. By letter dated January 28, 2003, Michael P. Steumer, Esq. (Doc. No. 20) informed the court that his client Anwar Muflahi had no objection to the subsequent representations by Messrs. Blair and Likoudis of Defendants Muhamed Muflahi and Nasr.

fendant on the advantage of the taking the proffered misdemeanor plea, counsel must take into account the disadvantage such benefit presents to the other non pleading Defendant, *i.e.*, the likelihood that the co-Defendant's adverse testimony at counsel's other client's trial will result in a felony conviction. Such patently conflicting loyalties and duties present an actual conflict.

Defense counsel's calculus of conflict also must balance the fact that Mohamed Muflahi's brother Anwar is a defendant against whom the adverse testimony of Nasr is required by the conditional terms of the Government's plea offer should Nasr be interested in the misdemeanor plea. In the absence of any indication that the two Muflahis are estranged, it may be safely presumed that Mohamed Muflahi is disinclined to accept the plea in part because he does not wish to implicate his brother Anwar. Such fact casts defense counsel in a position where they are representing one Defendant who has a natural common interest, based on a blood relationship, with the target of adverse testimony of Nasr, whom they also represent. Additionally, as noted, although Anwar Muflahi is now represented by new counsel, Blair and Likoudis did previously represent him for nearly six months. As such, counsels' representation of Mohamed Muflahi is inherently adverse to the interests of Nasr in deciding, with the objective assistance of counsel, whether to accept the proffered misdemeanor plea. Counsel may entertain the notion that they can perform this Janus-like feat without violating their respective duty of zealous representation to both Defendants but the court thinks otherwise.

Moreover, as the Government points out, Government Memorandum at 11, because Defendant Nasr was an employee at the Five Star Store, a defense may be raised that Nasr was trained by Anwar Muflahi or his brother Mohamed Muflahi,

to engage in the alleged violations to such an extent that Nasr could argue that he was unaware such conduct was unlawful, a required element for conviction. In this case, Defendants are charged with violations of 7 U.S.C. § 2024(b), a felony, which carries a maximum penalty of five years incarceration. As relevant, § 2024(b) punishes a person who "knowingly uses ... authorization cards, or access devices" in violation of 7 U.S.C. § 2011, *et seq.*, the Food Stamp Program Act of 1964 and regulations promulgated thereunder. To prove that an individual "knowingly" violated § 2024(b) it is necessary to establish that the person acted with knowledge that the charged misconduct was unlawful under the law and regulations enacted to implement the national Food Stamp Program. *Liparota v. United States*, 471 U.S. 419, 433, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). In other words, a defendant's awareness that his conduct is in fact in violation of the law is required for conviction. *United States v. O'Brien*, 686 F.2d 850, 851–53 (10th Cir.1982) (applying the statutory construction canon of lenity where the *mens rea* elements of a criminal statute are unclear). Forgoing of the opportunity to obtain a misdemeanor plea or to pursue such a defense at trial because to do so would potentially implicate Mohamed Muflahi, defense counsels' other client and Anwar Muflahi, their former client, would constitute a lapse in representation to Nasr sufficient to justify reversal on the basis of an ineffective assistance claim.

Further, the spectre of having Defendants go to trial and risk felony convictions when either or both could have received a misdemeanor conviction, or, at least in Nasr's case, potential acquittal, but for counsels' actual conflict does not engender confidence in the fairness and integrity of judicial proceedings. *Wheat, supra*, at 160, 108 S.Ct. 1692. The court notes that

as the investigation entailed the use of cooperating witnesses whose transactions with Defendants were electronically monitored and recorded by investigators, the cases against Defendants appear to carry a strong possibility of conviction. Nor can counsel proffer that Mohamed Muflahi's and Nasr's chances for acquittal at trial are enhanced by any form of joint defense as the charges are separate and they will be tried individually. As such, because the obvious advantage of a misdemeanor disposition would not be rationally traded for the risk of more serious punishment flowing from a likely felony conviction, the court finds that the circumstances, based on the nature of the Government's latest plea offer, have materially changed, making any waiver of the actual or potential conflict presented irrational. Further, for the same reason, the court finds that Defendants' waiver obtained following the *Curcio* hearing must also be set aside.

Counsel assert that if the Government's motion is granted, it will enable the government to unduly intrude on a defendant's right to select counsel by manipulation of the terms of a plea offer. While some circumstances where such potential interference with a defendant's right to select counsel could arise justifying a different result, that is not the situation presented on this record. Rather, the Government's plea offer is a reasonable response to Anwar Muflahi's desire to go to trial on the more significant charges arising from the instant investigation, and results from the Government's desire to obtain additional testimony against him in order to improve its chances for conviction on the several felony counts charged in the Indictment against Anwar Muflahi. There is no evidence that the Government's primary motive in its altered plea proposal was to pressure Defendants to obtain separate counsel. Therefore, Defendants' fear that the government conceivably may structure a plea proposal in order to dis-

place a defendant's attorney of choice, is insufficient to avoid disqualification.

In any event, plea bargaining is an established component of any criminal prosecution and a change in a government's plea negotiating stance, whether expected or not, is among the kinds of unforeseen developments in criminal cases that require vigilance by the courts in protecting a defendant's right to conflict free counsel by balancing that right against the defendant's right to select counsel of his choice. *See Wheat, supra,* at 162, 108 S.Ct. 1692 ("The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict even for those thoroughly familiar with criminal trials."). *Wheat,* 486 U.S. at 162–63, 108 S.Ct. 1692. In this case, that balance falls heavily in favor of constitutional requirement that Defendants receive effective assistance of counsel by assuring their right to counsel who can act free of conflicts that otherwise will interfere with their duty of loyalty. *See United States v. Malpiedi, supra,* at 466, 467 (unanticipated incriminatory testimony by witness previously represented by defendant's attorney required reversal of guilty verdict).

Finally, as Defendants' counsel will be disqualified from their further joint representation, it follows that as to both Defendants, any attempt by counsel to represent either Defendant will result in a further disqualifying conflict based on prior representation even if one of Defendants obtains new counsel. Such prior representation is also a ground for disqualification. *See United States v. Grisanti,* 1992 WL 281434 (W.D.N.Y.1992) (counsel's likely acquisition of prior confidential information created unreasonable risk that counsel could not effectively cross-examine prior client if client testified as government witness). For example, should Nasr, with advice of fresh counsel, decide to accept the Government's plea offer, Nasr will be a testifying

witness against Mohamed Muflahi should he elect to proceed to trial requiring Blair and Likoudis to cross-examine Nasr. Because such issue is not raised directly by the Government's motion, it will be necessary to give defense counsel an opportunity to be heard as to why both should not also be disqualified from further representation of either Defendant on this basis.

### CONCLUSION

Based on the foregoing, the Government's motion to disqualify counsel from further representation of both Defendants (Doc. No. 19) is GRANTED.

Mr. Blair, Mr. Likoudis and their firm, Bouvier, O'Connor, shall show cause in writing as to why they should not also be disqualified from further representation of either Defendant. Counsel's written response to this order, if any, shall be filed not later than **April 30, 2003**; Government's reply shall be filed not later than **May 7, 2003**. Oral argument shall be at the court's discretion. Time is excluded through May 7, 2003 under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(F) (pending motions). Further proceedings, including appearances of counsel, will be scheduled upon determination of the court's order to show cause barring counsel from any further representation in this case.

SO ORDERED.