UNITED STATES of America,

v.

Joseph MASSINO, Defendant.

No. 02–CR–307 (NGG).

United States District Court,
E.D. New York.

Oct. 27, 2003.

David Breitbart, Attorney at Law, Diarmuid White, White & White, Flora Edwards, Mathew J. Mari, Scott E. Leemon, Offices of Scott E. Leemon, New York City, for Defendants.

Greg D. Andres, Jim Walden, U.S. Attorney's Office, Brooklyn, NY, for Plaintiffs.

*MEMORANDUM AND ORDER*

GARAUFIS, District Judge.

In this case, the United States has charged Joseph Massino with racketeering and racketeering conspiracy. The Government has moved to disqualify Ephraim Savitt as Massino's court appointed death counsel due to a conflict of interest. The conflict arises from Savitt's prior representation of a cooperating witness ("CW") from 1998 to his sentencing in July of 2003. The Government may call CW to testify against Massino who, if this court permits, would be represented at trial by Savitt. For the following reasons, the court finds that Savitt's representation of Massino presents a conflict that is severe enough to merit Savitt's disqualification as court appointed death counsel.

## I. Background

In January 2003, Massino was indicted for racketeering and racketeering conspiracy, including predicate acts for illegal gambling, loansharking, murder and murder conspiracy. In August 2003, a second grand jury returned a separate indictment charging Massino with the 1999 conspiracy to murder and murder of Bonanno family captain Gerland Sciascia. All charges against Massino have been joined and will be tried together in a trial that is scheduled to begin on April 19, 2003. Due to his indictment for the murder of Sciascia, Massino is eligible for the death penalty pursuant to 18 U.S.C. § 1959. At the request of Massino and his counsel, the court appointed Savitt as death counsel pursuant to 18 U.S.C. § 3006.

Prior to his appointment as death counsel in the instant case, Savitt represented CW pursuant to the Criminal Justice Act. Savitt first was appointed to represent CW in 1998 and acted as his lawyer through sentencing in 2003. While representing CW, Savitt received notice of a letter pur-

suant to Section 5K1.1 of the United States Sentencing Guidelines that the Government submitted to the sentencing court on July 17 on behalf of CW. Savitt's notice of this letter was communicated orally; he was told that the letter contained information pertaining to CW's possible testimony against Massino. *See* Government's Letters to the Court, dated October 24, 2003 (indicating that Savitt received notice that the supplemental 5K1.1 letter sent to the sentencing court included information regarding CW's anticipated testimony against Massino).

Upon learning of Savitt's possible appointment as Massino's death counsel, the Government alerted Savitt of the potential conflict of interest. Despite this warning, Savitt accepted his appointment to serve as Massino's lawyer. Savitt is a conscientious and accomplished defense attorney who is, understandably, Massino's death counsel of choice. Massino believes that he can waive Savitt's conflict and still receive the effective assistance of counsel which is guaranteed to him by the Sixth Amendment.

## II. Legal Standard

### A. Sixth Amendment Right to Counsel

■ The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. The Sixth Amendment further guarantees that this counsel will be free of conflict. *See United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002) ("A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel"). *See also Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to repre-

sentation that is free from conflicts of interest").

■ The Sixth Amendment, however, does not guarantee a defendant the absolute right to retain counsel of his choosing. *See United States v. Locascio*, 6 F.3d 924, 931 (2d Cir.1993). As the Supreme Court stated in *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." The right to *specific* counsel is diminished, and perhaps completely vitiated, when the attorney is appointed. *See United States v. Mills*, 895 F.2d 897, 904 (2d Cir.1990) (the defendant "would not have been entitled to appointed counsel of his own choosing").

### B. Actual and Potential Conflicts of Interest

Conflicts of interest may be either actual or potential, and may result in a miscarriage of justice so severe as to require reversal. Because a defendant has a Sixth Amendment right to conflict-free counsel, the court must inquire into the nature of a conflict as soon as it is brought to the court's attention. *See United States v. Levy*, 25 F.3d 146, 153 (2d Cir.1994). Pursuant to this inquiry obligation, "the court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no conflict at all." *Id.* Neglecting this inquiry obligation is grounds for reversal. *See Wood*, 450 U.S. at 272–274, 101 S.Ct. 1097.

If the court does determine that a conflict exists, it must characterize that conflict as either actual or potential. An actual conflict of interest exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir.1995) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993)). The court presumes prejudice when the attorney has an actual conflict. *Id.* This presumption negates the usual requirement in ineffective assistance of counsel claims that the defendant establish by a reasonable probability that, but for the conflict, the outcome of the trial would have been different. *Schwarz*, 283 F.3d at 91. *See also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With the presumption created by an actual conflict, the defendant need only prove that a "lapse in representation" resulted from the conflict. *Malpiedi*, 62 F.3d at 469. To prove a "lapse in representation," "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* (internal quotations omitted).

Alternatively, this presumption is not created if the attorney has only a potential conflict. A defendant "has suffered ineffective assistance of counsel in violation of the Sixth Amendment if his attorney has a potential conflict of interest that resulted in prejudice to the defendant." *Levy*, 25 F.3d at 152.

### C. Disposing of Conflict: Disqualification or Waiver

Once the court has decided that a conflict exists, it must dispose of it either through disqualification or waiver. *US v. Kliti*, 156 F.3d 150, 153 (2d Cir.1998). The nature of the conflict determines how the court must proceed. A conflict may be either actual or potential. *Levy*, 25 F.3d at 152. A severe and actual conflict is unwaivable, and the court must disqualify an attorney who presents such a conflict. *Kliti*, 156 F.3d at 153. A severe and actual conflict is one so strong that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *Levy*, 25 F.3d at 153.

Anything short of a severe and actual conflict potentially is waivable. A lesser conflict is one despite which "a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation." *Id.* If only a lesser conflict exists, the court may obtain knowing and intelligent waivers from the affected defendants. In obtaining these waivers, the court should follow the procedures set out in *United States v. Curcio*, 680 F.2d 881, 888–90 (2d Cir.1982). As summarized in *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir.1986):

> *Curcio* requires the district court to (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

After completing a *Curcio* hearing, defendants may waive lesser and potential conflicts and retain their chosen or appointed counsel.

Disclosure and waiver pursuant to a *Curcio* hearing, however, may not protect adequately the defendant's Sixth Amendment's rights. Reversal on the basis of

attorney conflict could result if the reviewing court determines either that the conflict actually was too severe to be waived, or that the validly waived conflict evolved during the course of the trial into something unwaivable. In *Schwarz*, the district court conducted a *Curcio* hearing after which the defendant waived his attorney's conflict. The potential conflict which the defendant waived became an actual and unwaivable conflict during the course of the trial which affected the attorney's strategy. *Schwarz*, 283 F.3d at 91–94. The judgment subsequently was reversed.

### D. Standard of Review

A district court has "broad latitude" in determining whether to disqualify on the basis of a conflict or, alternatively, to allow a waiver. *Wheat*, 486 U.S. at 163, 108 S.Ct. 1692. According to the Supreme Court, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* Given this substantial latitude, the Second Circuit has reviewed such decisions only for an abuse of discretion. *See Locascio*, 6 F.3d at 931.

### III. Application of the Facts to the Above Legal Analysis

In the instant case, the court conducted its obligatory inquiry as soon as it learned about the possibility of a conflict of interest. The court has determined that at this early stage in the proceedings the conflict is at least potential as to Massino. A conflict based on professional ethics and the attorney-client privilege is actual as to CW.

### A. Conflict as it Applies to Massino

Massino has a Sixth Amendment right to counsel who is free from conflict. He is not, however, guaranteed court appointed counsel of his choosing. Massino has a team of privately retained attorneys who have been representing him since his indictment ten months ago. They have developed a relationship with Massino, and their continued representation will not be affected by Savitt's disqualification. Savitt, unlike Massino's other attorneys, was appointed by the court less than four weeks ago on October 3, 2003. Upon being notified of the possible conflict, the court immediately began its inquiry and put Massino's defense team on notice of his possible disqualification. Because Savitt has served only a short term as Massino's death counsel, and has been aware the entire time of possible disqualification, his removal would cause little prejudice to the Defendant. No significant work product or relationship would be undermined, and no newly appointed replacement would have lost valuable time in preparation.

Because of Savitt's prior representation of CW, he cannot ethically cross-examine CW without his consent. According to the court in *United States v. Lussier*, 71 F.3d 456, 462 (2d Cir.1995), "when a defense attorney cross-examines a former client who is a witness against the defendant, a conflict of interest may exist; absent a waiver from the former client, the attorney cannot inquire into the privileged matter." To avoid obtaining such a waiver, Massino asserts that Savitt would not cross-examine CW. This might mean that Savitt would pursue a particular defense strategy because of his loyalty to a witness testifying against his client. "An attorney who is prevented from pursuing a strategy or tactic because of the canons of ethics, is hardly an objective judge of whether that strategy is sound trial practice. Counsel's

inability to make such a conflict-free decision is itself a lapse in representation." *Malpiedi*, 62 F.3d at 469. The court in *Malpiedi* suggests that such "lapse in representation" is enough to establish prejudice when a conflict becomes actual. *Id.*

Additionally, the result of ineffective assistance of counsel due to such "lapse in representation" would be particularly severe in the instant case as Massino faces the death penalty. In a situation where the stakes are so high and the penalty so grave, the court must do everything in its power to protect the accused's Sixth Amendment rights, and to secure a just and fair trial.

### B. Conflict as it Applies to CW

CW was represented by Savitt during his plea and cooperation negotiations with the Government, and also during his sentencing. The Government has stated that it will include CW on its list of witnesses for the Massino trial. *See* Government's *Curcio* Letter, Dated October 22, 2003. While the Government reserves the right not to call CW, there is at least a possibility that he will testify against Massino at the trial.

During the course of his representation of CW, Savitt learned confidences that are protected by the attorney-client privilege. A conflict would arise during trial if Savitt concurrently were representing both CW and Massino, the man against whom CW will testify at trial. The Defendant has a right to question the Government's witnesses; those witnesses are advised to consult with counsel. Savitt represented CW from 1998 through July 2003, and counseled him when he made his cooperation agreement with the government. The nature and extent of this relationship suggest that CW valued Savitt's representation. CW may believe that he still is represented by Savitt, and attempt to consult him for advice.

Even if the court appointed another lawyer to represent CW for the purpose of the Massino trial, and Savitt terminated his representation of CW, a conflict based on the attorney-client privilege still would exist. According to the New York Disciplinary Rules ("DR") 5–108(A)(2),

> Except with the consent of the former client after full disclosure, a lawyer who has represented the former client in a matter shall not: (2) use any confidences or secrets of the former client except as permitted by DR 4–101(c) [1] or when the confidence or secret has become generally known.

DR 4–101(C) allows an attorney to reveal: "Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them." The information to which Savitt was privy conceivably could be useful in cross-examining or impeaching CW whom Savitt represented during the cooperation negotiations. Savitt, however, has not informed the court of any agreement whereby CW consented to

---

1. DR 4–101(C) in its entirety allows a lawyer to reveal: (1) confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them; (2) confidences or secrets when permitted under Disciplinary Rules or required by law or court order; (3) the intention of a client to commit a crime and the information necessary to prevent the crime; (4) confidences or secrets necessary to establish or collect the lawyer's fee or to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct; (5) confidences or secrets to the extent implicit in withdrawing a written or oral opinion or representation previously given by the lawyer and believed by the lawyer still to be relied upon by a third person where the lawyer has discovered that the opinion or representation was based on materially inaccurate information or is being used to further a crime or fraud.

Savitt's use of this information. The court presumes that CW has made no such agreement.

Massino's response to this concern is to limit Savitt's role in his defense, thus protecting CW's confidences from disclosure. Massino claims that Savitt's role is as death counsel, and that CW would testify only as to counts in the indictment that are not related to the charges implicating the death penalty. Savitt would not then have to cross-examine or impeach CW as his testimony would not affect the aspect of the case in which Savitt primarily is involved. *See* Defense Memorandum ("DM"), 4. The court, however, does not believe that Savitt effectively can isolate his knowledge about CW from the defense team, and thus avoid his responsibility to obtain a waiver from CW. As death counsel, Savitt will be involved not only with the death charge itself, but also with preparing the defense strategy in general. His privileged information may provide insights that result in part from his representation of CW. This creates a severe and actual conflict that puts at risk CW's protected communications.

Massino also claims that any information that once was held only by privilege has since been divulged to the government through the cooperation process, thus creating an implied waiver of his attorney-client privilege. *See* DM at 2–3. Again, DR 5–105 states that "except with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not: (2) use any confidences or secrets of the former client except ... when the confidence or secret has become generally known." It is not making something "generally known"

when a cooperating witness in the protection program secretly divulges information to the government. CW's status as a cooperating witness does not relieve Savitt of his professional responsibility to protect CW's confidential and secret communications.

Finally the Defendant claims that any information that Savitt might have that would be useful to Massino would have been turned over by the Government pursuant to *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[2] *See* DM at 3. Only CW knows if the confidences and secrets he shared with Savitt entirely overlap with those that he reported to the government. The content of the information he offered while cooperating certainly would affect the government's *Giglio* disclosure. CW continues to hold the privilege and only he, not Savitt, may choose to make a waiver.

## C. Automatic Disqualification over a *Curcio* Hearing

This court primarily is concerned with protecting Massino's Sixth Amendment right to representation by conflict-free counsel. Though the court did not appoint independent counsel to advise Massino, it did conduct a preliminary inquiry into whether Massino understood what was guaranteed to him by the Sixth Amendment. The parties discussed this conflict in open court with Massino present. At that time, Massino stated that he understood the conflict and wanted Savitt's continued representation.

Having now conducted its own inquiry into the scope of the conflict, the court independently has decided that this conflict is unwaivable. Given the nature and

---

**2.** The Government is obligated to disclose evidence to the defense that has obvious exculpatory value. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such evidence includes information that impeaches the credibility of the Government's witnesses. *Giglio,* 405 U.S. at 154–55, 92 S.Ct. 763.

complexity of the trial, the parties and the court are unable to predict all of the strategies that might become necessary in order to mount a vigorous and successful defense. Because of this unpredictability, the court believes that the best way to protect the integrity of this trial and to secure a just result is to eliminate this conflict while it remains only potential. The court does not believe that further conversation with Massino will change this result. Accordingly, the court invokes the "broad latitude" the Supreme Court described in *Wheat* "in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163, 108 S.Ct. 1692.

Moreover, the court is obligated to protect the rights of parties and to promote justice. As a result,

> the right to waiver is not absolute, since "federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." The question of disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the Government's interest in ensuring a just verdict and a fair trial.

*Locascio*, 6 F.3d at 931. To ensure a just outcome, the court disqualifies Ephraim Savitt as Massino's death counsel. The court will act immediately to appoint a similarly competent and effective replacement after consultation with Massino's attorneys in accordance with the law. 18 U.S.C. § 3006.

## IV. Conclusion

The Government's motion to disqualify Ephraim Savitt as Joseph Massino's appointed death counsel is GRANTED.

SO ORDERED.