15-2558-pr
Medrano v. United States of America

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY  ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 1ˢᵗ day of June two thousand seventeen.

Present:     PIERRE N. LEVAL,
             ROSEMARY S. POOLER,
             PETER W. HALL,
                     *Circuit Judges*.

———————————————————————————————————

SERGIO MEDRANO,

                     *Petitioner-Appellant*,

               v.                                          15-2558-pr

UNITED STATES OF AMERICA,

                     *Respondent-Appellee*.

———————————————————————————————————

Appearing for Appellant:     Matthew W. Brissenden, Garden City, NY.

Appearing for Appellee:     Michael D. Maimin, Assistant United States Attorney (John P. Cronan, Michael Ferrara, Assistant United States Attorneys, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Swain, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Sergio Medrano appeals from the July 27, 2015 order of the United States District Court for the Southern District of New York (Swain, *J.*) denying his petition to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255. His Section 2255 petition followed his guilty plea to a charge of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"[A]n actual conflict of interest occurs when the interests of a defendant and his attorney diverge with respect to a material factual or legal issue or to a course of action." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (internal quotation marks and emphasis omitted). "An actual, as opposed to a potential, conflict of interest exists when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995) (internal quotation marks). "Once an actual conflict is established, a defendant need not prove prejudice, but simply that a lapse in representation resulted from the conflict." *Williams*, 372 F.2d at 106 (internal quotation marks omitted). "To prove a lapse in representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Mapliedi*, 62 F.3d at 469 (internal quotation marks omitted).

Medrano argues that his attorney at sentencing, Arvom Robin, labored under an actual conflict because Robin previously represented Juan Ordenas. During sentencing, Medrano sought to have Robin argue that it was Ordenas, rather than Medrano, who was responsible for transporting the 180-kilograms of cocaine that the government sought to attribute to Medrano. Medrano wanted Robin to argue that a confusion had arisen because both Ordenas and Medrano are known by the nickname "Toca."

The district court concluded that there was no actual conflict, because at the time Robin represented Medrano, Ordenas's conviction was final. *Medrano v. United States*, Nos. 13 cv 1604, 06 CR 61, 2015 WL 4522857, at *5 (S.D.N.Y. July 27, 2015). While not persuaded by the district court's rationale, we need not decide the issue conclusively. Even assuming arguendo an actual conflict existed, Medrano's alternate defense strategy is simply not plausible. Medina identified Medrano as involved in the 180 kilogram shipment, not because Medina believed the shipment was controlled by someone called Toca, but because of his personal interactions with Medrano involving the drugs and the drug proceeds. Medina testified that he (1) met with Moreno and Medrano in mid-December 2003 at a restaurant in the Bronx and was told by Moreno that Medrano had just delivered a tractor trailer with 180-kilograms of cocaine concealed in a trap; (2) was instructed by Moreno to bring tools to open the trap to gain access to the rugs; (3) once the truck was taken to North Carolina to open the trap (which they had failed to open), began, at Moreno's instructions, to sell the drugs; (4) met with Moreno and Medrano in January 2004, observed them conferring, and was told by Moreno that they had discussed the need to collect payment for the 180-kilogram shipment; (5) was instructed by Moreno to

2

complete selling the drugs and deliver $2 million of the proceeds to Medrano; and (6) personally delivered to Medrano more than $2 million, representing the proceeds of his sale of the drugs. Medina's assertion of Medrano's involvement in no way depended on a belief on Medina's part that the shipment was controlled by someone named Toca. Furthermore, Medrano's attempt to attribute this shipment to Ordenas depended on the testimony of Jesus Dominguez. Dominguez testified that he had driven a truck containing a hidden shipment under Ordenas's control, which suffered a problem of inability to extricate the drugs from the trap. According to Dominguez's testimony, however, Dominguez was in prison at the time of the event involving the 180-kilogram shipment, so that the experience he recounted of inability to open a trap could not have involved the same event Medina described. Finally, even if Ordenas, who was part of the Cuco-branch of the conspiracy, which shipped drugs from California to New York for sale, might have had a role in sending the 180-kilo shipment from California to New York, this would in no way have negated the role Medrano played, according to Medina's testimony, upon the arrival of that shipment to the Bronx. Under the circumstances, there was no plausible way attorney Robin could have negated Medrano's responsibility for the 180-kilo shipment by arguing that Ordenas bore responsibility for it. *See United States v. Feyrer*, 333 F.3d 110, 118 (2d Cir. 2003) (declining to find alternate strategy plausible after a review of the record demonstrated otherwise).

We have considered the remainder of Medrano's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk